

FILED

Jan 28 2015, 9:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT
INDIANA EDUCATION EMPLOYMENT
RELATIONS BOARD

Gregory F. Zoeller
Attorney General of Indiana

David Steiner
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Eric M. Hylton
Laura S. Reed
Riley Bennett & Egloff, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Indiana Education Employment
Relations Board and Nettle
Creek School Corporation,

*Appellants,*

v.

Nettle Creek Classroom
Teachers Association,

*Appellee*

January 28, 2015

Court of Appeals Cause No.
49A02-1402-PL-78

Appeal from the Marion Superior
Court
The Honorable Thomas J. Carroll,
Judge
Cause No. 49D06-1204-PL-16036

**Bradford, Judge.**

# Case Overview

[1] In 2011, Appellant Nettle Creek School Corporation (the "School Corporation") and Appellee Nettle Creek Classroom Teachers Association (the "Association") were engaged in collective bargaining for the 2011-2012 school year. The School Corporation and the Association (collectively, "the parties") were unable to agree to a Collective Bargaining Agreement ("CBA") and came to an impasse. Both sides submitted a last best offer ("LBO") to Appellant the Indiana Education Employment Relations Board (the "Board") after mediation failed.

[2] The Association initiated judicial review after the Board adopted the School Corporation's LBO. On November 27, 2013, the trial court found that the Board erroneously determined that the relevant proffered provisions of the parties' LBOs included an improper attempt to bargain hours rather than wages. The trial court also found that the Board erroneously concluded that the Association's LBO contained an improper attempt by the Association to bargain for an overtime compensation system that is inconsistent with both Federal and Indiana law.

[3] Upon review, we conclude that while teachers are not entitled to earn overtime for the completion of direct teaching functions, the relevant legal authority does not exclude the bargaining for and potential receipt of additional wages for the completion of required ancillary or voluntary co-curricular duties. Accordingly, we remand the matter to the Board for further proceedings that are consistent with this opinion.

# Facts and Procedural History

[4] In 2011, the parties were engaged in collective bargaining for the 2011-2012 school year. The parties, however, were unable to agree to a CBA and came to an impasse. In light of the parties' failure to agree to a CBA, the parties participated in mediation. After mediation failed, both sides submitted a LBO to the Board. The disputed issues related to the Association's request for additional compensation for required hours worked outside the normal workday and certain grievance procedures.[1]

[5] On November 29, 2011, the Board appointed a factfinder to hear the parties' case. With respect to the parties' dispute relating to the Association's request for additional compensation for hours worked outside the normal seven-and-one-half-hour workday, the Association's proffered version of the provision at issue reads as follows:

> A.    (With the understanding that the established contractual teacher work day is seven hours and thirty minutes),[2] the [School Corporation] shall have the right to require a total of fifteen (15) hours

---

[1] The parties' dispute relating to the grievance procedures is not at issue in the instant appeal.

[2] The parties do not appear to dispute that the School Corporation expects its teachers to work seven-and-one-half hours each day.

after school activities per semester for each full-time teacher, without additional compensation.

B.       The compensation for each hour in excess of the fifteen (15) hours shall be based on the following rate:

Thirty Four (34) dollars per hour.

Appellant's App. p. 80.  The School Corporation's proffered version of the provision at issue reads as follows:

> Teachers are professional employees and are paid on a salary basis rather than an hourly basis.  The length of the normal work day for teachers will be 7.5 hours.  This normal teacher work day may be extended as necessary to prepare and update lesson plans and other instructional materials; conduct parent/teacher conferences; evaluate and record student performance; meet with students to counsel them and address their academic needs; attend and present information at faculty committee meetings, case conferences; participate in instructional leadership activities, including the responsibility for conducting program and staff evaluation; and participate in co-curricular assignments and extra-curricular assignments listed in the ECA Schedule in this Collectively Bargained Agreement.

Appellant's App. p. 99.   Following a hearing, the factfinder issued a recommended order in which it adopted the School Corporation's LBO as the parties' CBA for the 2011-2012 school year.  On January 11, 2012, the Association appealed the factfinder's order to the Board.

The Board held a hearing on January 24, 2012, after which it issued a final order.  With respect to the parties' dispute relating to the Association's request for additional compensation for required hours worked outside the normal workday, the Board stated the following:

Under [Indiana Code chapter] 20-29-4 and [Indiana Code section] 20-29-6-18(b), the [Board's] decision in this matter is restricted to wages, salary, and wage-related fringe benefits. In light of strong statutory language and legislative intent toward restricting contracts to these limited subjects, we are bound to omit from the imposed contract any language referring to other subjects. Compensation for hours worked outside the contracted work day and work year is a problematic issue, because it suggests a determination of hours to be worked. Hours, previously a subject of bargaining, has been legislatively re-categorized as an item for the discussion process under [Indiana Code section] 20-29-6-7, and, as such, may not receive even a mention in the contract. In order to comply with these statutory mandates here, the contract imposed by the [Board] for the Nettle Creek teachers cannot include Article IV of the School Corporation's LBO or Article III, Section G of the Association's LBO, as both contain daily hours of work.

****

6. [Indiana Code chapter] 20-29-4, [Indiana Code section] 20-29-6-18(b), and [Indiana Code section] 20-29-6-4.5(a)(5) make abundantly clear that all contracts imposed by [the Board] in the factfinding process are restricted to wages, salary, and wage-related fringe benefits.

7. In order to reconcile the statutory mandates of [Indiana Code section] 20-29-6-15.1 and [Indiana Code section] 20-29-6-18(b) in this case, and to assure that the contract we impose contains only statutorily-permissible language, the [Board] will strike the impermissible portion and adopt the remainder of one party's LBO.

8. Were we to find that both LBOs contained only permissible language in regards to hours, we would, nonetheless, be bound to reject the Association's proposal on compensation. An "overtime" system that permits different rates of pay based on the number of hours worked is precluded by statutory individual contract requirements. Specifically, [Indiana Code section] 20-28-6-2(a)(3)(C) provides that a "contract entered into by a teacher and a school corporation must … contain the … *total salary to be paid to the teacher during the school year*…" [emphasis added]. The individual teacher's contract could not be executed under an "overtime" compensation system because such a system would make it impossible to calculate a total salary to be paid during the school year in advance because the salary would be adjusted throughout the year based on the number of hours the teacher works.

Appellant's App. pp. 206-07, 209-10 (emphasis and last set of brackets in original, footnotes omitted). Consistent with the above-stated language, the Board found as follows: "[t]he Association's appeal is denied and the School Corporation's [LBO] is adopted as the Nettle Creek contract, except insofar as any references to the hours of work … in the School Corporation's [LBO] shall be omitted from the contract." Appellant's App. p. 213.

[7] On April 18, 2012, the Association filed a verified petition for judicial review of the Board's decision in the trial court. On May 9, 2012, the School Corporation filed its answer to the Association's petition. On June 13, 2012, the Board also filed an answer to the Association's petition. The Association subsequently filed a motion for judgment on the administrative record and supporting memorandum. The Board filed a response in opposition to the Association's motion on September 30, 2013. On October 11, 2013, the School Corporation filed a notice of its intention not to file a response to the Association's motion. The Association subsequently filed a reply in favor of its motion.

[8] On November 27, 2013, the trial court issued its findings of fact and conclusions thereon. Specifically, the trial court found as follows:

> 15. The issue in this case is whether [the Board] incorrectly rejected the Association's LBO based on its determination that [Indiana Code section] 20-29-6-4 prohibits the Association and the School Corporation from bargaining additional compensation for hours worked outside a teacher's contracted work day, and its determination that the Association's LBO would create a compensation system in violation of [Indiana Code section] 20-28-6-2. Additionally, what remedy should be entered if [the Board] incorrectly rejected the Association's LBO is also at issue.

**\*\*\*\***

17. … [I]t is this Court's determination that [the Board] incorrectly determined that [Indiana Code section] 20-29-6-4 does not permit the School Corporation and the Association to bargain pay for additional hours worked outside a teacher's regular teacher's contract, and incorrectly determined that the Association's LBO would "create a compensation system in violation of [Indiana Code section] 20-28-6-2(a)(3)(c)." (R. 490-91).

18. As a result, the Court finds that [the Board's] decision is arbitrary, capricious and not in accordance with the law. Ind. Code § 4-21.5-5-14.

**\*\*\*\*\***

*25. The bargaining of additional wages for additional hours worked outside the contracted work day does not bargain hours, but instead bargains wages.*

*26. At no time does the School Corporation lose the power to determine how many hours teachers work per day. Instead, the School Corporation unilaterally determines the number of hours and if a teacher is required to work additional hours outside the contracted work day, [Indiana Code section] 20-29-6-4(a)(2) allows wages to be bargained to compensate teachers for this additional work.*

27. Therefore, [the Board] incorrectly held that "Compensation for hours worked outside the contracted work day is a problematic issue, because it suggests a determination of hours to be worked."

28. Next, [the Board] incorrectly held that:

An "overtime" system that permits different rates of pay based on the number of hours worked is precluded by statutory individual contract requirements. Specifically, [Indiana Code section] 20-28-6-2(a)(3)(C) provides that a "contract entered into by a teacher and a school corporation must … contain the … *total salary to be paid to the teacher during the school year*…." [emphasis added]. The individual teacher's contract could not be executed under an "overtime" compensation system because such a system would make it impossible to calculate a total salary to be paid during the school year in advance because the salary would be adjusted throughout the year based on the number of hours the teacher works."

29. [The Board's] decision does not take into consideration all of the language of [Indiana Code section] 20-29-6-4(a) which states:

(a) A school employer shall bargain collectively with the exclusive representative on the following:

(1) Salary.

(2) Wages.

(3) Salary and wage related fringe benefits, including accident, sickness, health, dental, vision, life, disability, retirement benefits, and paid time off as permitted to be bargained under [Indiana Code section] 20-28-9-11.

****

31. The $34/hour that the Association proposed in its LBO is the bargaining of "wages" and not "salary." Therefore, the Association's proposal does not violate [Indiana Code section] 20-29-6-4.

****

40. Again, if the parties were to agree to the Association's wage proposal, they would not be bargaining the number of hours worked. Instead, the School Corporation would control how many hours teachers worked above and beyond the hours contained in their regular teacher's contract. The only change is that the parties will be allowed to bargain wages for this additional work.

41. This gives a school corporation flexibility if it needs to add hours on top of what is in a regular teacher's contract and provides wages to teachers for working the extra hours.

42. [The Board] was concerned that allowing the bargaining of additional wages would violate [Indiana Code section] 20-3-28-6-2(a)(3)(C) because the regular teacher's contract must contain the total "salary" to be paid to a teacher during the school year. This ruling has no effect on a teacher's "salary." Instead, this ruling allows the bargaining of additional "wages" for additional hours worked beyond what is contained in a regular teacher's contract.

43. As previously stated, "salary" and "wages" are two separate items that can be bargained under [Indiana Code section] 20-29-6-4 and therefore have different meanings.

44. Based on the foregoing, this Court finds that under [Indiana Code section] 20-29-6-4, school corporations and teacher associations can bargain additional wages for hours worked over the number of hours contained in a regular teacher's contract.

45. The Court further finds that the wage proposal made by the Association at fact-finding in its LBO is permissible and can be bargained under [Indiana Code section] 20-29-6-4, and it does not violate the regular teacher's contract statutes at [Indiana Code section] 20-28-6-2.

Tr. pp. 374, 375, 377-78, 380 (emphasis added to Paragraphs 25 and 26; emphasis, brackets, and ellipses in Paragraph 28 in original). In making these findings, the trial court reversed the Board's decision and ordered that the matter be remanded to the Board "to enter an order consistent with [the trial court's order], and to make further findings [as to] whether the School Corporation's or the Association's LBO should be chosen based on a correct interpretation of the law as stated herein." Appellant's App. p. 380-81. The Board subsequently initiated the instant appeal.[3]

# Discussion and Decision

## I. Standard of Review

[9]     While the legislature has granted courts the power to review the action of state government agencies taken pursuant to the Administrative Orders and Procedures Act [("AOPA")], this power of judicial review is limited. *See State Bd. of Registration for Prof'l Eng'rs v. Eberenz*, 723 N.E.2d 422, 430 (Ind. 2000); *Indiana Dep't of Envtl. Management v. Conard*, 614 N.E.2d 916, 919 (Ind. 1993); *Indiana Dep't of Natural Resources v. United Refuse Co.*, 615 N.E.2d 100, 103 (Ind. 1993). A court may only set aside agency action that is:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

---

[3] We disagree with the Association's assertion that the Board does not have standing to prosecute the instant appeal.

> (2) contrary to constitutional right, power, privilege, or
> immunity;
> (3) in excess of statutory jurisdiction, authority, or limitations,
> or short of statutory right;
> (4) without observance of procedure required by law; or
> (5) unsupported by substantial evidence.
> *See* Ind. Code § 4-21.5-5-14(d).

*LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000). "The party seeking judicial review bears the burden to demonstrate that the agency's action is invalid." *Pendleton v. McCarty*, 747 N.E.2d 56, 61 (Ind. Ct. App. 2001) (citing Ind. Code § 4-21-5-5-14(a)).

[10] A review of an administrative agency's decision at the trial court level "is not intended to be a trial de novo, but rather the court simply analyzes the record as a whole to determine whether the administrative findings are supported by substantial evidence." *Whirlpool Corp. v. Vanderburgh Cnty.-City of Evansville Human Relations Comm'n*, 875 N.E.2d 751, 759 (Ind. Ct. App. 2007) (citing *Amoco Oil Co. v. Comm'r of Labor*, 726 N.E.2d 869, 872 (Ind. Ct. App. 2000)). A party may appeal a trial court's determination of the propriety of the administrative agency's decision pursuant to the rules governing civil appeals. *See* Ind. Code § 4-21.5-5-16. "When reviewing an administrative agency's decision, appellate courts stand in the same position as the trial court." *Pendleton*, 747 N.E.2d at 61 (citing *Amoco*, 726 N.E.2d at 872).

[11] An appellate court "may not substitute [its] judgment on factual matters for that of the agency and are bound by the agency's findings of fact if [the findings] are supported by substantial evidence." *Whirlpool*, 875 N.E.2d at 759 (citing *Ind.*

*Dep't of Natural Res., Law Enforcement Div. v. Cobb*, 832 N.E.2d 585, 590 (Ind. Ct. App. 2005)).

> Furthermore, courts that review administrative determinations, at both the trial and appellate level, review the record in the light most favorable to the administrative proceedings and are prohibited from reweighing the evidence or judging the credibility of witnesses. [*Amoco*, 726 N.E.2d at 873.] While reviewing courts must accept the agency's findings of fact if supported by substantial evidence, no such deference need be accorded an agency's conclusions of law, as the law is the province of the judiciary. *Id*.

*Id*. However, "[a]n interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself." *LTV Steel*, 730 N.E.2d at 1257; *State Emps. Appeals Comm'n v. Barclay*, 695 N.E.2d 957, 959-60 (Ind. Ct. App. 1998).

# II. Analysis

## A. Relevant Statutory Authority Relating to Collective Bargaining Between a School Corporation and the Exclusive Representative of Its Teachers

[12] Indiana Code section 20-29-6-4(a) provides that a school corporation shall bargain collectively with the exclusive representative of its teachers (the "teachers' representative") regarding the following: (1) salary; (2) wages; and (3) salary and wages related to fringe benefits, including accident, sickness, health, dental, vision, life, disability, retirement benefits, and paid time off. During collective bargaining, the school corporation and the teachers'

representative must discuss certain items, including: (1) curriculum development and revision; (2) selection of curricular materials; (3) teaching methods; (4) hiring, evaluation, promotion, demotion, transfer, assignment, and retention of certificated employees; (5) student discipline; (6) expulsion or supervision of students; (7) pupil/teacher ratio; (8) class size or budget appropriations; (9) safety issues for students and employees in the workplace, except those items required to be kept confidential by state or federal law; and (10) hours. Ind. Code § 20-29-6-7. However, "[t]he obligation to discuss does not require either party to enter into a contract, agree to a proposal, or make a concession related to the items listed in [Indiana Code section 20-29-6-7]." Ind. Code § 20-29-6-8.

[13]   If an impasse is declared at any time after at least sixty days following the beginning of formal collective bargaining, the Board shall appoint a mediator from the Board's staff or an ad hoc panel. Indiana Code § 20-29-6-13(a). The mediation must consist of not more than three mediation sessions and must result in either (1) an agreement between the parties on the items permitted to be bargained or (2) each party's LBO, including fiscal rationale, related to items permitted to be bargained. Indiana Code § 20-29-6-13(c). If an agreement has not been reached on the items permitted to be bargained within fifteen days of the end of mediation, the Board shall initiate fact-finding. Indiana Code § 20-29-6-15.1(a).

[14]   Fact-finding must culminate in the factfinder imposing contract terms on the parties. Ind. Code § 20-29-6-15.1(b).

> The factfinder must select one (1) party's last best offer as the contract terms. The factfinder's order must be restricted to only those items permitted to be bargained and included in the collective bargaining agreement … and must not put the employer in a position of deficit financing (as defined in [Indiana Code section] 20-29-2-6). The factfinder's order may not impose terms beyond those proposed by the parties in their last, best offers.

*Id*. Fact-finding must not last longer than fifteen days. Ind. Code § 20-29-6-15.1(d). Either party may appeal the decision of the factfinder to the Board within thirty days after receiving the factfinder's decision. Ind. Code § 20-29-6-18(a). The Board's decision must be restricted to only those items permitted to be bargained and included in the collective bargaining agreement and must not put the employer in a position of deficit financing. Ind. Code § 20-29-6-18(b). The Board's decision "may not impose terms beyond those proposed by the parties in their last, best offers." *Id*. The Board's decision must be issued within thirty days after receipt of the notice of appeal. Indiana Code § 20-29-6-18(c).

## B. Salary vs. Wages

A salary is "[a]greed compensation for services—[especially] professional or semiprofessional services—[usually] paid at regular intervals on a yearly basis, as distinguished from an hourly basis." BLACK'S LAW DICTIONARY 1537 (10th Ed. 2014). A wage is "[p]ayment for labor or services, [usually] based on time worked or quantity produced; [specifically], compensation of an employee based on time worked or output of production." BLACK'S LAW DICTIONARY 1811 (10th Ed. 2014). "Wages include every form of remuneration payable for a

given period to an individual for personal services, including salaries, commissions, vacation pay, bonuses, and the reasonable value of board, lodging, payments in kind, tips, and any similar advantage received from the employer." BLACK'S LAW DICTIONARY 1811 (10ᵗʰ Ed. 2014). Indiana Code section 20-28-6-4(b) specifically provides that "[s]alary and wages include the amount of pay increases available to employees under the salary scale adopted under [Indiana Code section] 20-28-9-1.5, but do not include the teacher evaluation procedures and criteria, or any components of the teacher evaluation plan, rubric, or tool."

[16]    Under both Federal and Indiana law, a teacher is not entitled to receive overtime. Specifically, Section 207 of the Fair Labor Standards Act ("the Act") provides that employees shall receive overtime compensation for hours worked in excess of forty hours per week. 29 U.S.C. § 207. However, the Act exempts certain employees from this requirement, including teachers employed in elementary or secondary schools. 29 U.S.C. § 213. "Exemptions from the Act are defined by regulations promulgated by the Department of Labor." *Osler Inst., Inc. v. Inglert*, 558 N.E.2d 901, 903 (Ind. Ct. App. 1990). Although the statutory exemptions are to be narrowly construed, "[t]he regulations are entitled to great weight and have been held to carry the full force of law." *Id*. Further, Indiana Code section 20-29-6-3 provides that "[i]t is unlawful for a school employer to enter into any agreement that would place the employer in a position of deficit financing due to a reduction in the employer's actual general

fund revenue or an increase in the employer's expenditures when the expenditures exceed the employer's current year actual general fund revenue."

[17] While we recognize that teachers are not entitled to receive overtime compensation for performing their "normal" teaching duties, *i.e.*, duties that are completed as part of one's direct teaching function, we further recognize that a school corporation may require its teachers to undertake, or a teacher may agree to undertake, certain duties beyond a teacher's "normal" teaching duties. Specifically, a school corporation may require its teachers to perform certain ancillary duties, such as professional development and training or attending conferences. In addition, teachers may agree to take on certain co-curricular responsibilities, such as coaching athletic teams or sponsoring an academic or extracurricular club. It is undisputed that teachers may negotiate for additional wages for responsibilities associated with co-curricular duties that are voluntarily assumed by a teacher.[4] In the same vein, we interpret the above-discussed law to allow that teachers could potentially receive additional wages for ancillary duties.

---

[4] *See* Article III of the School Corporation's LBO which sets forth the pay schedule for certain co-curricular responsibilities.

[18]     Stated differently, we interpret the law to provide that although the law does not allow for the receipt of overtime compensation by teachers related to their direct teaching functions, teachers are not necessarily excluded from receiving additional wages for required or agreed upon ancillary duties. Notably, counsel for the Board conceded during oral argument that it is possible under the relevant statutory authority for a teacher to earn wages in addition to the teacher's salary and that an agreed-upon salary for direct teaching functions does not exclude wages for other functions completed by the individual teacher. As such, we conclude that teachers may negotiate with their employers for the receipt of additional wages for these ancillary duties. In reaching this conclusion, however, we do not mean to say that a school corporation must compensate teachers for the ancillary duties, but only that the law allows that teachers may negotiate with their employers for additional compensation for said ancillary duties.[5]

---

[5] Further, as our conclusion relates only to those ancillary duties that are required by the school corporation, any award of additional wages would not put a school corporation in a position of deficit spending as the school corporation controls the number of ancillary duties it requires of its teachers and should therefore be able to budget accordingly.

# C. The Instant Matter

Again, here, the Association's proffered version of the provision at issue reads as follows:

> A.    (With the understanding that the established contractual teacher work day is seven hours and thirty minutes), the [School Corporation] shall have the right to require a total of fifteen (15) hours after school activities per semester for each full-time teacher, without additional compensation.
> B.    The compensation for each hour in excess of the fifteen (15) hours shall be based on the following rate:
>         Thirty Four (34) dollars per hour.

Appellant's App. p. 80. During oral argument, counsel for the Association clarified that the Association's proffered provision represented an attempt to bargain for additional wages for ancillary duties which the School Corporation required of its teachers and was not a request for overtime compensation for duties relating to teachers' direct teaching functions.

On remand, the Board should review the parties' proffered LBO's taking into consideration our conclusion that the parties may negotiate for additional wages for required ancillary duties, *i.e.*, duties that are required by the School Corporation but are not considered to be direct teaching functions. We note, however, that in issuing this opinion, we do not mean to dictate any particular outcome to the Board. Our opinion merely sets forth the legal parameters under which the Board should consider the parties' LBOs. The determination of which LBO to adopt as the parties' contract is within the discretion of the

Board so long as the Board's decision is made in accordance with the legal parameters set herein.

[21] The matter is remanded to the Board for further proceedings consistent with this opinion.

Najam, J., and Robb, J., concur.