ATTORNEYS FOR APPELLANT
Eric M. Hylton
Laura S. Reed
Riley Bennett & Egloff, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
JAY SCHOOL CORPORATION
Mark D. Gerth
Marcia A. Mahony
Kightlinger & Gray, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
INDIANA EDUCATION
EMPLOYMENT RELATIONS
BOARD
Sarah Cudahy
Indianapolis, Indiana

Gregory F. Zoeller
Attorney General of Indiana

Kyle Hunter
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR AMICUS
CURIAE INDIANA SCHOOL
BOARDS ASSOCIATION
Lisa F. Tanselle
Indianapolis, Indiana



FILED

Jul 21 2016, 12:36 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

_____

# In the
# Indiana Supreme Court

_____

No. 49S05-1603-PL-113

JAY CLASSROOM TEACHERS ASSOCIATION,

*Appellant (Plaintiff below),*

v.

JAY SCHOOL CORPORATION AND
INDIANA EDUCATION EMPLOYMENT RELATIONS BOARD,

*Appellees (Defendants below).*

_____

Appeal from the Marion Superior Court 2, No. 49D02-1402-PL-3406
The Honorable Theodore M. Sosin, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 49A05-1412-PL-586

_____

**Rush, Chief Justice.**

In 2011, our Legislature made significant amendments to statutes addressing collective bargaining for teachers and their employers. Pursuant to these amendments, when the parties fail to reach a collective bargaining agreement ("CBA") regarding salaries, wages, and related fringe benefits, the Indiana Education Employment Relations Board ("IEERB") appoints a mediator. If mediation also fails to produce a CBA, the parties must exchange their last best offers ("LBOs"). The IEERB then appoints a factfinder, who considers certain statutory factors—such as whether an LBO will cause the school corporation to engage in deficit financing—and accordingly selects which side's LBO to adopt as the CBA for that year. The adopted LBO may not include a provision that conflicts with state or federal law, and a party may appeal the factfinder's decision to the IEERB.

Here, a teachers association appealed a factfinder's decision to adopt the school's LBO. The IEERB affirmed the factfinder, approving a contract provision allowing a superintendent to place teachers hired mid-school-year on any line of an established, bargained-for salary scale. In so doing, the IEERB rejected the teachers association's claim that the salary flexibility provision unlawfully gave the superintendent unilateral and unfettered discretion over late-hires' salaries, thereby conflicting with the association's statutory right to bargain collectively to establish salaries. Given the deferential standard of review afforded to agency action, we conclude the IEERB's affirmance was lawful. We find that the adopted LBO, including the salary flexibility provision, was, in fact, collectively bargained and that important checks limited the superintendent's discretion.

## Facts and Procedural History

The Jay Classroom Teachers Association ("Association") and the Jay School Corporation ("School") reached an impasse after failing to arrive at a CBA for the 2013–2014 school year. After mandatory mediation proved unsuccessful, the Association and School exchanged LBOs, and the IEERB initiated the statutorily mandated factfinding process.

During factfinding, the parties debated several issues, including the legality of a salary flexibility provision from the School's LBO. That provision read as follows:

> Teachers hired after the commencement of the 2013–2014 school year may be placed on any line of the scale as determined by the Superintendent. After the initial placement of any teacher, the teacher shall remain on the same line on the scale, regardless of any other factors.

Ultimately, the factfinder chose the School's LBO—including the salary flexibility provision—as the parties' CBA for the 2013–2014 school year.

The Association appealed to the IEERB. After a hearing, the IEERB affirmed the factfinder's decision and adopted, for the most part, the School's LBO as the CBA for the 2013–2014 school year. The IEERB approved the salary flexibility provision despite the Association's claim that it unlawfully eliminated certain starting salaries from the bargaining process. The IEERB explained that although the provision gave the School power over teacher salaries to which the Association may not have agreed, this was "the nature of a binding fact finding process." The IEERB also construed the provision to mean that late-hired teachers' salaries would be set for the year and that they would not be eligible for any salary increases for the duration of the contract—but that nothing within the provision precluded these teachers from being eligible for a salary increase after the contract term.

The Association then petitioned for judicial review, and both sides sought summary judgment. The trial court affirmed the IEERB's decision, rejecting the Association's claim that the salary flexibility provision unlawfully restricted teachers' rights to bargain collectively. The trial court reasoned that nearly all LBOs will contain provisions to which the parties have not agreed; the Association's dislike of the provision did not mean that the issue of salaries for late-hired teachers was not bargained in the first place; and that once parties enter mandatory factfinding, they "have lost the ability to bargain" a specific term. The trial court added that it was not unreasonable for a school superintendent to have the authority "to hire qualified employees and have the flexibility to offer attractive compensation for the potential new hires in line with available funds."

The trial court also rejected the Association's argument that it would be unable to demonstrate that the LBO could cause deficit financing if the superintendent is allowed to set salaries for teachers hired after the school year begins. The trial court concluded that if late-hired teachers' contracts caused expenditures to exceed actual revenue, then the deficit financing statute would render those contracts void.

The Association appealed, maintaining that the salary flexibility provision was unlawful because it "conflicts with the statutory right of school employees to collectively bargain to establish salaries." Jay Classroom Teachers Ass'n v. Jay Sch. Corp., 45 N.E.3d 1217, 1226 (Ind. Ct. App. 2015).[1] The Court of Appeals agreed with the Association and reversed the trial court, holding the salary flexibility provision "unambiguously, impermissibly conflicts with the Association's statutory right to collectively bargain to establish salaries." Id. The School and the IEERB sought transfer, which we granted, thereby vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

**Standard of Review**

Pursuant to Indiana's Administrative Order and Procedures Act ("AOPA"), we may set aside an agency action only if it is

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

---

[1] On direct appeal, the Association also argued that the IEERB improperly struck a contract provision in both parties' LBOs that "provid[ed] additional wages to teachers who volunteer or are assigned to cover a class." Jay Classroom Teachers Ass'n, 45 N.E.3d at 1223. The trial court had affirmed the IEERB's decision to strike the additional compensation provision, concluding that "teachers cannot receive payment above their salaries for teaching duties and that this provision allowed teachers to be double paid for their assigned duties." Id. at 1221–22. The Court of Appeals disagreed and held that the additional compensation provision was permissible. Id. at 1225 (citing Ind. Educ. Emp't Relations Bd. v. Nettle Creek Classroom Teachers Ass'n, 26 N.E.3d 47, 49 (Ind. Ct. App. 2015) (holding the law "does not exclude the bargaining for and potential receipt of additional wages for the completion of required ancillary or voluntary co-curricular duties")). We agree and summarily affirm the Court of Appeals on this issue. Ind. Appellate Rule 58(A)(2).

Ind. Code § 4-21.5-5-14(d) (Supp. 2012). The party seeking judicial review bears the burden of proving the agency action is invalid for one of the above five reasons. Id. § 4-21.5-5-14(a).

Further, when reviewing a challenge to an administrative agency's decision, "this Court will not try the facts de novo nor substitute its own judgment for that of the agency." State Bd. of Registration for Prof'l Eng'rs v. Eberenz, 723 N.E.2d 422, 430 (Ind. 2000) (citing Ind. Dep't of Envtl. Mgmt. v. Conard, 614 N.E.2d 916, 919 (Ind. 1993)). Rather, we defer to the agency's findings if they are supported by substantial evidence. Ind. Dep't of Envtl. Mgmt. v. West, 838 N.E.2d 408, 415 (Ind. 2005).

On the other hand, we review an agency's conclusions of law de novo. Nat. Res. Def. Council v. Poet Biorefining–N. Manchester, LLC, 15 N.E.3d 555, 561 (Ind. 2014). Although an agency's interpretation of a statute presents a question of law entitled to de novo review, the agency's interpretation is given "great weight." West v. Office of Ind. Sec'y of State, No. 49S02-1511-PL-668, 2016 WL 3090189, at *3 (Ind. June 2, 2016) (quoting Chrysler Grp., LLC v. Review Bd. of Ind. Dep't of Workforce Dev., 960 N.E.2d 118, 123 (Ind. 2012)). In fact, "if the agency's interpretation is reasonable, we stop our analysis and need not move forward with any other proposed interpretation." Id. This is true even if another party presents "an equally reasonable interpretation." Chrysler, 960 N.E.2d at 124 (citing Sullivan v. Day, 681 N.E.2d 713 (Ind. 1997)).

In light of this standard of review, the issue facing us is narrow: Did the IEERB reasonably conclude that the salary flexibility provision was lawful?

**Discussion and Decision**

**I. Indiana's Collective-Bargaining Statutes for Teachers Have Always Ensured the Right to Collectively Bargain, and 2011 Amendments Promoted Speed and Finality in the Bargaining Process.**

Since our founding 200 years ago, Indiana has cherished public education—reflected in our constitutional guarantee of a tuition-free, "general and uniform system of Common Schools . . . equally open to all." Ind. Const. art. 8, § 1. Because public schools ensure Hoosiers these constitutional rights and are also not for profit, I.C. § 20-29-1-1(4)(A) (2014), the unique relationship between school corporations and teachers cannot be compared to the relationship between private employers and employees, id. § 20-29-1-1(4). Indeed, the General Assembly

5

recognizes Hoosiers' "fundamental interest" in developing cooperative and harmonious relationships between school corporations and their teachers. Id. § 20-29-1-1(1). And that fundamental interest imposes upon the State the "basic obligation to protect the public by attempting to prevent any material interference with the normal public school educational process." Id. § 20-29-1-1(3). Recognizing that obligation, the General Assembly implemented collective bargaining for teachers in 1973 by passing Public Law 217, 1973 Ind. Act 1085—requiring schools and teachers to collectively bargain salary, wages, hours, and related fringe benefits. See Lisa B. Bingham, Teacher Bargaining in Indiana: The Courts and the Board on the Road Less Traveled, 27 Ind. L. Rev. 989, 990 (1994). Even though the collective-bargaining statutes have changed throughout the years—and are now located at Indiana Code article 20-29—there is one steadfast principle: that a strong educational system for Hoosier children depends on "harmonious and cooperative relationships between school corporations and their certificated employees." I.C. § 20-29-1-1(1) (2014); 1973 Ind. Act 1085 (containing same language).

In 2011, the statutory scheme governing collective bargaining for teachers was significantly amended to promote speed and finality. Although those amendments left intact the bargaining rights and obligations of teachers and schools, I.C. §§ 20-29-4-1, -6-1 (Supp. 2011), they reduced the number of bargaining subjects and imposed explicit time limits for mandatory mediation and factfinding.

Specifically, the 2011 amendments eliminated permissive bargaining subjects altogether, compare id. § 20-29-6-7, with I.C. § 20-29-6-7(b) (2007), while also limiting mandatory bargaining subjects to just wages, salaries, and related fringe benefits, compare I.C. § 20-29-6-4 (Supp. 2011), with I.C. § 20-29-6-4 (2007). When the parties fail to reach a CBA on the mandatory bargaining subjects, an impasse is declared.

Then, within fifteen days of the IEERB receiving a notice of impasse, the parties enter mandatory mediation with an IEERB-appointed mediator. Id. § 20-29-6-13(b) (Supp. 2011). The prior collective-bargaining statutes were silent as to the mediation's duration, scope, and substance, see I.C. §§ 20-29-6-13, -14 (2007)—but the 2011 amendments limit the parties to three mediation sessions, I.C. § 20-29-6-13(c) (Supp. 2011), and they require the parties to mediate the mandatory bargaining subjects, id. §§ 20-29-6-4, -13(c)(1). Mediation may not last more than

thirty days, id. § 20-29-6-13(e); and if the parties do not ratify an agreement, they must exchange LBOs and proceed to binding factfinding, id. § 20-29-6-15.1(a). The 2011 amendments limit factfinding to fifteen days, unlike the 2007 collective-bargaining statutes that set no explicit time constraints on the factfinding process. Compare id. § 20-29-8-7(f), with I.C. § 20-29-8-7(f) (2007) (requiring the factfinder to "make the investigation, hearing, and findings as expeditiously as the circumstances permit").[2]

But perhaps the 2011 amendments' most significant change was introducing LBOs into factfinding. LBOs are parties' final offers, which must be restricted to the enumerated bargaining subjects—and they must include supporting fiscal rationale, I.C. § 20-29-6-13(c)(2) (Supp. 2011), because an LBO cannot place the school corporation in a position of deficit financing, that is, spending more than its current year actual general fund revenue, id. § 20-29-6-3(a). The collective-bargaining statutes then require the factfinder to "make an investigation and hold hearings as the factfinder considers necessary," id. § 20-29-8-7(b); allow the factfinder to consider evidence from the parties, the IEERB, or other state agency, id. § 20-29-8-7(d); and oblige the factfinder to issue an order imposing one party's LBO as the CBA for the school year, id. § 20-29-6-15.1(b). In choosing an LBO, the factfinder must consider four statutory factors:

1. Past memoranda of agreements and contracts between the parties.

2. Comparisons of wages and hours of the employees involved with wages of other employees working for other public agencies and private concerns doing comparable work, giving consideration to factors peculiar to the school corporation.

3. The public interest.

4. The financial impact on the school corporation and whether any settlement will cause the school corporation to engage in deficit financing as described in I.C. § 20-29-6-3.

Id. § 20-29-8-8. In other words, the factfinder must decide which LBO better fits these factors before imposing it as the parties' CBA. Further, the factfinder's order must be restricted to the enumerated bargaining subjects listed in Indiana Code section 20-29-6-4 (again, salary, wages,

---

[2] In 2015, the legislature again amended the collective-bargaining statutes. Among other changes, the 2015 version of the statutes lengthened the time allotted for factfinding from fifteen to thirty days. 2015 Ind. Acts 3194–95 (amending I.C. § 20-29-6-15.1).

and related fringe benefits); must not impose any terms beyond those proposed in the chosen LBO; and, of course, must not place the school corporation in deficit financing. Id. § 20-29-6-15.1(b).

Then unlike prior versions of the collective-bargaining statutes, the 2011 amendments expressly allow either party to appeal the factfinder's order to the IEERB—the agency tasked with implementing and overseeing educational collective bargaining. Compare id. § 20-29-6-18, with I.C. §§ 20-29-3-1, -11 (2007). For appeals, the IEERB's decision, like the factfinder's, must be confined to the enumerated bargaining subjects, must not impose any terms beyond those proposed in the parties' LBOs, and must not put the school corporation in a position of deficit financing. I.C. § 20-29-6-18(b) (Supp. 2011). Unless a party seeks judicial review under the AOPA, the IEERB's decision is final.

Here, the parties followed this bargaining process through formal collective bargaining, mediation, factfinding, and appeal to the IEERB, ultimately arriving at a CBA for the 2013–2014 school year. Now, they dispute the legality of only one provision in that CBA: the salary flexibility provision. Whether that provision is permissible under the collective-bargaining statutes—as the IEERB concluded—is the narrow question we must now resolve.

**II. A Contractual Provision Allowing a School Superintendent to Place Teachers Hired Mid-Year on Any Line of the Established, Bargained Salary Scale Does Not Conflict with the Teachers Association's Right to Collectively Bargain to Establish Salaries.**

Under the AOPA, the Association (as the party seeking judicial review) bears the burden of proving that the IEERB's decision in adopting the School's LBO was invalid. I.C. § 4-21.5-5-14(a) (Supp. 2012). To that end, the Association argues the salary flexibility provision in the School's LBO conflicts with its statutory right to bargain collectively to establish salaries, I.C. § 20-29-4-1 (Supp. 2011), and is thus impermissible, id. § 20-29-6-2(a)(2).

In that regard, it is helpful to note that the Association does not argue that its LBO better fit the four statutory factors or that it was error to conclude otherwise. In other words, the Association does not insist that its LBO better reflected past agreements between the parties, compared more favorably to other public or private employee contracts in Jay County, better served the public interest, or was more in the financial interest of the School. Instead, the Association argues only that the salary flexibility provision infringes on its collective bargaining right by giving the superintendent unilateral discretion in setting a late-hire's salary. We disagree,

8

concluding that the salary flexibility provision is permissible not only because it was collectively bargained, but also because it did not give the superintendent unilateral discretion over late-hired teachers' salaries.

By statutory definition, this contract, including the salary flexibility provision, was bargained, even though it was the product of factfinding. See I.C. § 20-29-2-2 (2007). Collective bargaining under the statutes is a process—spanning from informal negotiations, through formal bargaining, then (if needed) through mandatory mediation, and finally (if needed) to binding factfinding. In effect, the term "bargain collectively" encompasses more than agreement or acquiescence; it "means the performance of the mutual obligation[s]" between school employers and employees to "meet at reasonable times to negotiate in good faith" and "execute a written contract incorporating any agreement." Id. Here the parties did just this. They met at reasonable times, negotiated in good faith, and executed a written agreement—albeit one that happened to result from factfinding. Importantly, the collective-bargaining statutes mandate that if and when the parties reach factfinding, the factfinder must choose one of the two LBOs by applying the four statutory factors and then impose that LBO as the parties' contract. I.C. § 20-29-6-15.1(b) (Supp. 2011). Otherwise, the entire impasse procedure would be defective because no contract imposed through factfinding could be considered to have been "bargained" in the sense the Association uses the term.

Concluding that a factfinder-imposed LBO is a bargained-for contract also comports with the collective-bargaining statutes' emphasis on finality. Although the pre-2011 version of the statutes defined the purpose of factfinding as "giv[ing] a neutral advisory opinion," I.C. § 20-29-8-5 (2007), the current version defines the purpose as "provid[ing] a *final* solution on the items permitted to be bargained," I.C. § 20-29-8-5 (Supp. 2011) (emphasis added). Likewise, other 2011 amendments—shortening formal collective bargaining, particularly the mediation and factfinding periods; introducing LBOs into factfinding; and mandating that factfinding "must culminate in the factfinder imposing contract terms on the parties," id. § 20-29-6-15.1(b)—all speak to finality. Indeed, the 2011 amendments instruct that while school employers and employees share rights and obligations to bargaining, the collective bargaining process must end. Notably, the Association even stipulated in briefing and at oral argument that a factfinder-imposed LBO, as here, is a bargained contract.

9

Despite this concession, the Association argues the salary flexibility provision unlawfully defeats its right to bargain salaries under Indiana Code section 20-29-4-1 by giving the superintendent unilateral or unfettered discretion over late-hires' salaries.[3] But as explained below, this is not so for two reasons: the late-hired teachers had to receive a base salary off of a bargained-for scale; and this scale, along with the statutory prohibition on deficit spending, limited the superintendent's discretion.

At oral argument, the parties acknowledged that the 2012–2013 salary scale was collectively bargained, and both parties' LBOs for the 2013–2014 school year began with that same scale—though the School's LBO kept the base salaries the same and made each teacher eligible to receive a raise from the $200,000 the School set aside for raises; while the Association's LBO distributed $512,000 in raises across the scale to arrive at a new proposed salary scale. And the salary flexibility provision within the School's LBO explicitly did not allow a teacher (timely or late-hired) to receive a base salary off this established scale. In other words, the provision expressly tied the superintendent's discretion to the established, bargained-for salary scale. We conclude, therefore, that the superintendent's authority was neither unilateral nor unfettered and so did not conflict with the Association's right to collectively bargain to establish salaries under Indiana Code section 20-29-4-1.

Furthermore, the superintendent's authority was also limited by the prohibition on deficit spending. As stated above, when choosing an LBO, the factfinder must consider "[t]he financial impact on the school corporation and whether any settlement will cause the school corporation to engage in deficit financing." Id. § 20-29-8-8. And the IEERB, too, must consider deficit financing when hearing an appeal of the factfinder's decision. Id. § 20-29-6-18(b). Finally, the collective-bargaining statutes flatly prohibit a school from "enter[ing] into any agreement that would place [it] in a position of deficit financing." Id. § 20-29-6-3(a). By extension, *any* contract—including a late-hired teacher's contract—"that provides for deficit financing is void to that extent." Id. § 20-29-6-3(b). Consequently, the superintendent could not place a late-hired teacher on a line of the scale if doing so would place the School in deficit financing, further limiting the superintendent's

---

[3] Interestingly, the Association conceded at oral argument that it has since bargained this salary flexibility provision in subsequent CBAs with the School. And both sides noted that this or a similar salary flexibility provision has appeared in other CBAs between teachers associations and schools in Indiana.

discretion under this salary flexibility provision. For this reason as well, we disagree with the Association that the salary flexibility provision gives the superintendent unilateral or unfettered discretion—though we note, as did the factfinder, that this provision and others like it are potentially "powerful tool[s] that should be used cautiously and skillfully since [they] could have broad ramifications."

## Conclusion

We hold the Association failed to meet its burden under the AOPA, as it did not show that the IEERB's decision adopting the School's LBO was invalid. Rather, we defer to the IEERB's conclusion that the salary flexibility provision was not unlawful, noting both that the provision in question was collectively bargained and that important checks limited the superintendent's discretion in establishing late-hires' salaries. Consequently, we affirm the trial court.

David, Massa, and Slaughter, JJ., concur.

Rucker, J., dissents with separate opinion.

11

**Rucker, J., dissenting.**

I respectfully dissent. Indiana Code section 20-29-4-1 provides in relevant part: "School employees may . . . participate in collective bargaining with school employers through representatives of their own choosing . . . to establish, maintain, or improve salaries, wages, salary and wage related fringe benefits . . . ." And Indiana Code section 20-29-6-2(a)(2) provides in relevant part: "Any contract may not include provisions that conflict with . . . school employee rights set forth in IC 20-29-4-1 . . . ." As the Court of Appeals points out the LBO provision authorizing the Superintendent to determine unilaterally the salary of teachers hired after the school year begins "unambiguously, impermissibly conflicts with the Association's statutory right to collectively bargain to establish salaries under Section 20-29-4-1 and thus violates Section 20-29-6-2(a)(2)." Jay Classroom Teachers Ass'n v. Jay Sch. Corp., 45 N.E.3d 1217, 1226-27 (Ind. Ct. App. 2015). I agree and would thus join my Court of Appeals colleagues in reversing the judgment of the trial court.