

**FILED**
Nov 13 2015, 10:40 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Eric M. Hylton
Laura S. Reed
Riley Bennett & Egloff, LLP
Indianapolis, IN 46204

ATTORNEYS FOR APPELLEE
INDIANA EDUCATION
EMPLOYMENT RELATIONS
BOARD

Gregory F. Zoeller
Attorney General of Indiana

Kyle Hunter
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
JAY SCHOOL CORPORATION

Mark D. Gerth
Marcia A. Mahony
Kightlinger & Gray, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jay Classroom Teachers
Association,

*Appellant-Defendant,*

v.

Jay School Corporation and
Indiana Education Employment
Relation Board,

*Appellees-Plaintiffs*

November 13, 2015

Court of Appeals Case No.
49A05-1412-PL-0586

Appeal from the Marion County
Superior Court

The Honorable Theodore M.
Sosin, Judge

Trial Court Cause No.
49D02-1402-PL-003406

**Vaidik, Chief Judge.**

# Case Summary

[1] The Jay Classroom Teachers Association ("the Association") appeals from the trial court's determination that the Association did not meet its burden to overturn the order of the Indiana Education Employment Relations Board ("the Board") adopting, in part, the Last Best Offer ("LBO") of the Jay School Corporation ("the School"), after the parties attempted to negotiate a Collective Bargaining Agreement for 2013-14, but reached an impasse. We find that under both statutory law and *Nettle Creek* a teacher can receive additional compensation for ancillary duties, and that covering another teacher's class during the normal workday can be a compensable ancillary duty outside the scope of normal teaching duties—where both parties agreed to the same additional-compensation provision and included it in their respective LBOs. We conclude, therefore, that it was reversible error for this provision to have been stricken by the Board from the School's LBO. Further, because the Association has the statutory right to bargain to establish salaries, we also conclude that the Board erred in finding that the provision giving the Superintendent the authority to establish the salaries of teachers hired after the start of the school year did *not* violate Indiana law. Accordingly, we reverse the trial court's affirmance of the Board's order and remand to the Board.

# Facts and Procedural History

[2] The citizens of Indiana have a fundamental interest in the development of harmonious and cooperative relationships between school corporations and their certified employees. Ind. Code § 20-29-1-1(1). Recognition of the right of school employees to organize and acceptance of the principle and procedure of collective bargaining between school employers and school employee organizations can alleviate various forms of strife and unrest. I.C. § 20-29-1-1(2). The statutory scheme governing the collective bargaining process between school corporations and teachers in Indiana, Indiana Code Article 20-29, was significantly amended in 2011. These 2011 amendments brought about a number of significant changes, including a new method for computing teacher salaries. Also the amendments clarified the statutory rights and responsibilities of both school employees and employers. *See* Ind. Code § 20-29-4-1 (providing in relevant part that "[s]chool employees may . . . participate in collective bargaining with school employers through representatives of their own choosing . . . to establish, maintain, or improve salaries . . . ."); Ind. Code § 20-29-4-3 (setting forth a non-exhaustive list of the "operations and activities of the school corporation" that school employers have the "responsibility and authority to manage and direct on behalf of the public[.]") The parties disagree as to the import of these statutory changes.

[3] In the case before us, the Jay Classroom Teachers Association ("the Association") and the Jay School Corporation ("the School") reached an impasse in their attempt to negotiate a Collective Bargaining Agreement for

2013-14. Following mediation, which was unsuccessful, the parties each submitted a Last Best Offer ("LBO") to be presented at a fact-finding hearing. *See* Ind. Code § 20-29-6-13 (providing that if an impasse is declared at any time at least sixty days following the beginning of formal collective bargaining, a mediator shall be appointed; the mediation must result in either an agreement between the parties or each party's LBO). The Indiana Education Employment Relations Board ("the Board") appointed a factfinder, and a fact-finding hearing was held on November 5, 2013. *See* Ind. Code § 20-29-8-7 (setting forth the details of the factfinder's investigation, hearing, findings, and recommendations). According to Section 20-29-6-15.1—added as part of the 2011 legislative overhaul to Article 20-29—the factfinder must select one party's LBO as the contract terms, considering the four factors set forth in Section 20-29-8-8. *See* Ind. Code § 20-29-6-15.1.[1] These four factors are as follows:

> (1) Past memoranda of agreements and contracts between the parties.

> (2) Comparisons of wages and hours of the employees involved with wages of other employees working for other public agencies

---

[1] According to Section 20-29-6-15.1, the factfinder's order must be

> restricted to only those items permitted to be bargained and included in the collective bargaining agreement under section 4 of this chapter and must not put the employer in a position of deficit financing (as defined in IC 20-29-2-6). The factfinder's order may not impose terms beyond those proposed by the parties in their last, best offers.

and private concerns doing comparable work, giving consideration to factors peculiar to the school corporation.

(3) The public interest.

(4) The financial impact on the school corporation and whether any settlement will cause the school corporation to engage in deficit financing as described in IC 20-29-6-3.

I.C. § 20-29-8-8. In this case, following the hearing, the Board's factfinder issued his report and order recommending that the School's LBO be adopted as the 2013-14 Master Contract.

[4] The Association appealed the factfinder's recommended order, and the Board held a public hearing, after which the Board issued an order in January 2014. *See* Ind. Code § 20-29-6-18(b) (providing that either party may appeal the factfinder's decision to the Board; the Board's decision must be restricted to only those items permitted to be bargained and included in the collective bargaining agreement and must not put the employer in a position of deficit financing). In its order, the Board affirmed and accepted the School's LBO as the Collective Bargaining Agreement, but ordered that a provision be stricken that appeared in both the Association's and the School's LBOs, which authorized additional compensation for teachers as follows:

Teachers volunteering to take a class will be compensated per period or block. In the event no teacher volunteers, a teacher will be assigned to cover the vacancy. The middle school teachers will receive fifteen ($15.00) per period and the high school teachers will receive twenty dollars ($20.00) per block. The

elementary school teachers will receive fifteen ($15.00) dollars per forty (40) minute block of time. Substitute priority will be given to the elementary schools.

Appellant's App. p. 212, 246.

[5] The Board struck this provision from the School's ultimately adopted LBO, explaining in its order that it was statutorily restricted to approving only permissible provisions—regardless of whether the provision was in dispute—and that the stricken provision at issue was apparently meant to apply in a situation where a teacher volunteers or is assigned to cover a vacancy, presumably for a class period when a substitute is unavailable; as such, the Board found that the provision "would allow teachers to be double-paid for an assignment of duties." *Id*. at 70.

[6] Additionally, the Board, over the Association's objection, determined that another provision from the School's LBO, allowing the Superintendent to determine the pay of a teacher who was hired after the school year began, *was* a permissible provision under the law. This provision reads as follows:

> Teachers hired after the commencement of the 2013-14 school year may be placed on any line of the scale as determined by the Superintendent. After the initial placement of any teacher, the teacher shall remain on the same line of the scale, regardless of any other factors.

Appellant's App. p. 246.

[7]     In explaining its reasoning in finding this provision permissible, the Board determined that it is "the nature of a binding fact finding process" for one party's LBO to contain provisions to which the other party may not have agreed. *Id.* at 67. The Board also stated that it did not read this provision to prohibit a new hire from receiving an increase after the contract term. As such, the compensation model in the School's LBO was found to be permissible.

[8]     In February 2014, following the Board's decision, the Association filed a verified petition for judicial review requesting the trial court to set aside the Board's order and remand with instructions to the Board to adopt the Association's LBO instead. Then the Association filed a motion for summary judgment. The School and the Board filed their responses to the Association's motions, and the School filed a cross-motion for summary judgment.

[9]     In November 2014, the trial court affirmed the Board's decision, finding that the School's LBO was chosen largely due to financial difficulties of the School and because the School's LBO was the better choice when evaluated according to the four statutory factors listed in Section 20-29-8-8. The trial court noted that this was a new statute which substantially changed teacher collective bargaining and, as the parties did not have the benefit of statutory interpretation to guide their decisions on what to include or exclude, it is "entirely likely that both parties' LBOs might include impermissible items"—and indeed, this is "precisely what occurred." *Id.* at 14. The trial court further determined that "a logical interpretation" of the statute was that an LBO cannot be rejected because of the presence of an impermissible item but that the fact finder "must

choose the LBO that is in the overall best interest of the parties and the public pursuant to the [statutory] factors, and delete terms (if any) which are not permissible." *Id*. at 15 (internal citation omitted).

[10] With regard to the provision authorizing additional compensation for teaching duties performed during the school day, the trial court agreed that teachers cannot receive payment above their salaries for teaching duties and that this provision allowed teachers to be double paid for their assigned duties.

[11] As to the provision allowing the Superintendent to determine a new teacher's starting salary mid-term, the trial court rejected the Association's argument that this provision in the School's LBO unlawfully restricted bargaining. Instead the trial court concluded that "[o]nce the parties enter mandatory factfinding, they have lost the ability to bargain those terms." *Id*. at 19. Furthermore it was not unreasonable for the Superintendent to have the authority—whether bargained or as a result of the LBO process—"to hire qualified employees and have the flexibility to offer attractive compensation for the potential new hires in line with available funds." *Id*. at 20. The trial court also rejected the Association's argument that allowing the Superintendent to set teacher salaries after the school year begins would prevent the Association from demonstrating that the LBO could cause deficit financing. In response to the Association's "highly improbable" hypothesized scenario wherein "[t]he School Corporation could get its LBO in place and then decide to hire 5 AP Calculus Teachers for $150,000/each[,]" the trial court concluded that the deficit financing statute

would make the teachers' contracts void, if those contracts caused expenditures to exceed actual revenue. *Id*. at 20, 21.

[12] Finally, the trial court found that the Association did not meet its burden to overturn the Board's order, finding that the Association did not argue that its LBO was the best—or consistent with the statutory factors of Section 20-29-8-8. Based on these findings and conclusions, the trial court concluded that the Association had not met its burden to overturn the Board's Order adopting the School's LBO, and denied the Association's petition for judicial review.

[13] The Association now appeals, arguing that the trial court erred in denying its petition, in concluding that the Board permissibly deleted the provision pertaining to what the Association characterizes as "ancillary duties" (compensating teachers who cover a class during the regular school day), and in concluding that the provision in the School Corporation's LBO authorizing the Superintendent to determine salaries for teachers hired after the start of the school year did not violate statutory law.

# Discussion and Decision

## A. Standard of Review

[14] The legislature has granted courts limited power to review the action of state government agencies taken pursuant to the Administrative Orders and Procedures Act ("AOPA"). *See Ind. Educ. Employment Relations Bd. v. Nettle Creek Classroom Teachers Ass'n*, 26 N.E.3d 47, 53 (Ind. Ct. App. 2015); *State Bd.*

*of Registration for Prof'l Eng'rs v. Eberenz*, 723 N.E.2d 422, 430 (Ind. 2000). Under the AOPA, a court may only set aside agency action that is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

Ind. Code § 4-21.5-5-14(d); *Nettle Creek*, 26 N.E.3d at 53-54. A review of an administrative agency's decision at the trial court level is not intended to be a trial de novo; instead, the court analyzes the record as a whole to determine whether the administrative findings are supported by substantial evidence. *See Whirlpool Corp. v. Vanderburgh Cnty.-City of Evansville Human Relations Comm'n*, 875 N.E.2d 751, 759 (Ind. Ct. App. 2007). "The burden of demonstrating the invalidity of agency action is on the party to the judicial review proceeding asserting invalidity." I.C. § 4-21.5-5-14(a).

[15] Decisions on petitions for review of agency action are appealable in accordance with the rules governing civil appeals from the courts. Ind. Code § 4-21.5-5-16. "When reviewing an administrative agency's decision, appellate courts stand in

the same position as the trial court." *Pendleton v. McCarty,* 747 N.E.2d 56, 61 (Ind. Ct. App. 2001) (citing *Amoco Oil Co. v. Comm'r of Labor,* 726 N.E.2d 869, 872 (Ind. Ct. App. 2000)). This Court may not substitute its judgment on factual matters for that of the agency, and we are bound by the agency's findings of fact if they are supported by substantial evidence. *See Whirlpool,* 875 N.E.2d at 759. Moreover, courts reviewing administrative determinations—at both the trial and appellate level—review the record in the light most favorable to the administrative proceedings and are prohibited from reweighing the evidence or judging the credibility of witnesses. *Amoco,* 726 N.E.2d at 873. While reviewing courts must accept the agency's findings of fact if supported by substantial evidence, no such deference need be accorded an agency's conclusions of law, as the law is the province of the judiciary. *Id.* However, "[a]n interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself." *LTV Steel Co. v. Griffin,* 730 N.E.2d 1251, 1257 (Ind. 2000); *see also Hoosier Outdoor Advertising Corp. v. RBL Mgmt., Inc.,* 844 N.E.2d 157, 163 (Ind. Ct. App. 2006), *trans. denied.*

## B. Provision for Additional Wages for Covering Class

The Association contends first that the Board erred in striking the provision providing additional wages to teachers who volunteer or are assigned to cover a class. Specifically, the Association argues that in light of this Court's recent

*Nettle Creek* opinion,[2] the Board erred in striking the provision on the grounds that teachers cannot be "double-paid for an assignment of duties." *See* Appellant's App. p. 70; Appellant's Br. p. 7.

[17] In *Nettle Creek*, the parties—Nettle Creek School Corporation ("the Nettle Creek School") and the Nettle Creek Classroom Teachers' Association ("the Nettle Creek Association")—came to an impasse in their collective bargaining. After mediation failed, both sides submitted LBOs to the Board; the disputed issue was the Nettle Creek Association's request for additional compensation for required hours worked outside the normal seven-and-one-half-hour workday. In particular, the Nettle Creek Association's proffered version of this provision in their LBO established that the Nettle Creek School had a right to require a seven-and-one-half-hour workday and fifteen hours of after-school activities for each full-time teacher, without additional compensation; hours worked beyond that would be compensated at thirty-four dollars an hour. *Nettle Creek*, 26 N.E.3d at 50.

[18] The Nettle Creek School's LBO, on the other hand, declared that teachers were paid on a salary basis rather than an hourly basis and that while the normal work day is 7.5 hours, it may be extended without additional pay for a number

---

[2] The Association relies on the *Nettle Creek* opinion for the first time on appeal because the opinion was issued in January 2015, whereas the trial court issued its order in November 2014. Indeed, as pointed out by the Board, "*Nettle Creek* was the first case decided under the 2011 changes to teacher collective bargaining." Appellee Board's Br. p. 10.

of after-school activities, including parent/teacher conferences and extra-curricular assignments. *See id.*

[19] Following a hearing, the factfinder recommended the adoption of the Nettle Creek School's LBO as the parties' Collective Bargaining Agreement, and the Nettle Creek Association appealed the factfinder's order to the Board. Ultimately the Board affirmed the factfinder's recommendation, adopting the Nettle Creek School's LBO as the contract "except insofar as any references to the hours of work . . . in the School Corporation's [LBO] shall be omitted from the contract."[3] *Id.* at 51.

[20] The Nettle Creek Association filed a verified petition for judicial review of the Board's decision in the trial court. The trial court reversed and remanded the Board's decision. On appeal, this Court initially set forth the distinction between salary and wages[4] and recognized that under both Federal and Indiana law, teachers are not entitled to receive overtime for performing their "'normal' teaching duties, *i.e.*, duties that are completed as part of one's direct teaching

---

[3] "Hours" was a permissible subject for collective bargaining prior to the 2011 amendments.

[4] As stated in *Nettle Creek*:

> A salary is "[a]greed compensation for services—[especially] professional or semiprofessional services—[usually] paid at regular intervals on a yearly basis, as distinguished from an hourly basis." Black's Law Dictionary 1537 (10th Ed. 2014). A wage is "[p]ayment for labor or services, [usually] based on time worked or quantity produced; [specifically], compensation of an employee based on time worked or output of production." Black's Law Dictionary 1811 (10th Ed. 2014). "Wages include every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, bonuses, and the reasonable value of board, lodging, payments in kind, tips, and any similar advantage received from the employer." Black's Law Dictionary 1811 (10th Ed. 2014).

26 N.E.3d at 55.

function." *Id*. at 56. However, we found that the law *does* allow teachers to negotiate with their employers for additional compensation (wages) for certain agreed-upon or required duties—"ancillary duties"—beyond their normal teaching duties.[5] *Id*. Ancillary duties may include professional development and training, conference attendance, or certain co-curricular responsibilities, such as coaching athletic teams or sponsoring an academic or extracurricular club.[6] *Id*. at 56.

> Stated differently, we interpret the law to provide that *although the law does not allow for the receipt of overtime compensation by teachers related to their direct teaching functions, teachers are not necessarily excluded from receiving additional wages for required or agreed upon ancillary duties*.

*Id*. (emphasis added).

[21] In the case before us, the Association asserts that the duty or act covered by the stricken provision—in which a teacher volunteers or is assigned to cover a class, and receives additional compensation for doing so—falls outside of a teacher's "normal teaching duties," and should be characterized as an "ancillary duty."

---

[5] In a footnote, we wrote that because our conclusion relates only to ancillary duties required by the school corporation, any award of additional wages would not put a school corporation in a position of deficit spending in violation of Indiana Code section 20-29-6-3, as "the school corporation controls the number of ancillary duties it requires of its teachers and should therefore be able to budget accordingly." *Nettle Creek*, 26 N.E.3d at 56 n.5.

[6] Black's Law Dictionary defines "ancillary" as "[s]upplementary; subordinate." Black's Law Dictionary 105 (10th Ed. 2014).

*See* Appellant's Br. p. 9. In light of *Nettle Creek*, their argument continues, bargaining of wages for additional, ancillary duties is permissible; and indeed, the Association and the School were clearly in agreement on this point as they both included the same additional-compensation provision in their respective LBOs. As such, the Association contends that the Board's order striking the provision in the School's ultimately selected LBO was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under Indiana Code section 4-21.5-5-14(d).

[22] The School argues, however, that "[t]he Association's argument fails in this case because the issue is the right of teachers to be compensated for teaching duties performed during the school day" as opposed to ancillary duties, which was the issue in *Nettle Creek*. Appellee School's Br. p. 12. The School continues: "Under the Court's holding in *Nettle Creek*, a teacher may not be paid double for teaching a class during the regular school day." *Id*. at 13. This is, of course, an extension of *Nettle Creek*, which explicitly addresses the distinction between "normal" teaching duties (i.e., duties completed as part of one's "direct teaching function") and duties *beyond* a teacher's "normal" teaching duties, or "ancillary duties." *See Nettle Creek*, 26 N.E.3d at 56. So it is still an open question whether ancillary duties can occur during the normal, contracted teachers' workday, or whether anything that occurs during the normal, contracted workday is, by definition, considered part of normal teaching duties. The Board urges this Court to adopt the following bright-line rule: "that teachers may not bargain compensation, outside of salary, for any assignments

during the normal work day." Appellee's Board's Br. p. 5. Even if we are not willing to adopt such a rule, the Board maintains that the additional-compensation provision at issue in this case—which covered acts occurring during the normal workday and also involved core teaching duties—was clearly impermissible and thus properly struck from the School's LBO.

[23] We disagree with the Board, and we reject the adoption of a bright-line, one-size-fits-all rule for each school corporation; instead, we find that the question of ancillary duties can be determined at the local level. Particularly where, as here, both the Association and the School included the very same additional-compensation provision in their respective LBOs. This shows a clear agreement and understanding between the parties that covering another teacher's class during the normal workday *does* fall outside the scope of normal teaching duties—at least within *this* school district—and thus authorizing additional compensation for this duty does not constitute "double payment." We cannot say this is unreasonable since teachers who volunteer or are assigned to cover a vacancy are generally sacrificing their preparation time in order to do so. Also, this result is consistent with—though not compelled by— *Nettle Creek*. In sum, we find that the provision was not prohibited by statute or otherwise impermissible. *See* I.C. § 20-29-6-18(b) (providing that the Board's decision must be restricted to only those items permitted to be bargained and included in the collective bargaining agreement). In light of the above, we find that compensable "ancillary duties" can occur during the normal teachers'

workday—where both parties agree to them and where they are not otherwise impermissible.

## C. Provision Authorizing Superintendent to Set New Hire Salary

[24] Next, the Association challenges the provision, which the Board left standing in the School's LBO, authorizing the Superintendent to determine the salary of teachers hired after the school year begins. This provision reads as follows:

> Teachers hired after the commencement of the 2013-14 school year may be placed on any line of the scale as determined by the Superintendent. After the initial placement of any teacher, the teacher shall remain on the same line on the scale, regardless of any other factors.

Appellant's App. p. 246. The Board, in finding this provision permissible, read it to say that these teachers' salaries will be set for the year (i.e., the teachers will not be eligible for any salary increases for the duration of the contract), but this provision does not prohibit these teachers from being eligible for receiving an increase after the contract term. *See* Appellant's App. p. 67.

[25] The Association now contends that this provision conflicts with the statutory right of school employees to collectively bargain to establish salaries. Specifically, Indiana Code section 20-29-4-1 provides that

> School employees may:
>
> > (1) form, join, or assist school employee organizations;

> (2) participate in collective bargaining with school
> employers through representatives of their own choosing;
> and
>
> (3) engage in other activities, individually or in concert;
>
> to *establish*, maintain, or improve *salaries*, wages, salary and wage
> related fringe benefits, and other matters set forth in IC 20-29-6-4
> and IC 20-29-6-5.

(Emphasis added). And "[a]ny contract may not include provisions that conflict with . . . employee rights set forth in IC 20-29-4-1 . . . ." Ind. Code § 20-29-6-2(a)(2). Thus the Association argues that this LBO provision runs afoul of the statutory prohibition on provisions that conflict with the Association's right to bargain to establish salaries, given that this provision authorizes the Superintendent to unilaterally set the salaries of certain teachers, without the salaries being bargained.

The School argues, however, that the provision does not give the Superintendent unfettered discretion in setting the salaries of teachers hired after the start of the school year because the Superintendent must set the newly hired teachers' salaries in accordance with the salary scale contained in the collective bargaining agreement. The Board contends that "[w]ith the 2011 amendments, the legislature moved the establishment of teacher salaries away from the old system of charts with teacher experience on one axis and teacher education on the other[,]" and "[t]his shift, away from a rigid salary determination . . . supports the Board's conclusion that the provision giving the

superintendent the discretion to place a new teacher's salary at any point on the salary scale is in accordance with law." Appellee Board's Br. p. 16-17. Essentially the Board asserts that the 2011 amendments gave the School and the Superintendent in particular greater powers and more flexibility, and this provision is in line with that increased power and flexibility. The Board further alleges that the Superintendent needs the authority to unilaterally determine salaries because parties are generally not allowed to bargain during the school year.

[28] We find that this provision unambiguously, impermissibly conflicts with the Association's statutory right to collectively bargain to establish salaries under Section 20-29-4-1 and thus violates Section 20-29-6-2(a)(2). *See* I.C. § 20-29-4-1 ("School employees may . . . participate in collective bargaining with school employers through representatives of their own choosing . . . to establish, maintain, or improve salaries, wages, salary and wage related fringe benefits . . . ."); I.C. § 20-29-6-2(a)(2) ("Any contract may not include provisions that conflict with . . . school employee rights set forth in IC 20-29-4-1 . . . ."). And we find the School's and the Board's arguments in support of this provision unavailing. First, we are unpersuaded by the argument that the Superintendent does not have unfettered discretion because the salaries must still be in accordance with the salary scales contained in the collective bargaining agreement, or that there is nothing to prevent the teachers from receiving a salary increase or decrease, as the case may be, after the contract term. While it may be true that this provision does not prohibit these teachers from being

eligible for decreases or increases after the contract term, any salary set by the Superintendent is nonetheless an unbargained, unilateral decision that will have repercussions beyond the duration of the contract because it will always be that teacher's starting salary; in other words, although the teacher may receive increases thereafter, they will always be increases from *that* initial salary determined by the Superintendent. And, realistically, we find it implausible to imagine a teacher's salary being decreased once that teacher is hired at a higher salary.

[29] The Board argues that the 2011 amendments—the shift in how salaries are established and the change in the rights and responsibilities of both the school employees and employers—gave the School and the Superintendent greater powers and more flexibility. The Board's argument, however, ignores Section 20-29-4-1(2), which confers on school employees the right to "participate in collective bargaining with school employers through representatives of their own choosing . . . to establish, maintain, or improve salaries . . . ."—a right that cannot be ignored in light of Section 20-29-6-2(a)(2), which prohibits contracts containing provisions that conflict with statutorily conferred school-employee rights.

[30] Finally, as to the Board's contention that the Superintendent needs the power to determine salaries because parties are generally not allowed to bargain during the school year, we note that at oral argument on this case, the Association proposed a simple solution to this alleged problem: a "memorandum of understanding" entered into by the Association and the School, which would

preserve the statutory right of the parties to bargain to establish the salaries of teachers hired after the start of the school year—even those hired after the end of the formal collective bargaining period.[7]

[31] In conclusion, we find that the additional-compensation provision was not impermissible and should not have been stricken by the Board, whereas the Superintendent provision *was* impermissible and *should* have been stricken by the Board. Accordingly we reverse the trial court's decision affirming the Board's order, and remand to the Board for further proceedings consistent with this opinion.[8]

Reversed and remanded.

Robb, J., and Barnes, J., concur.

---

[7] Counsel for the Association also noted at oral argument that it is not at all implausible that the beginning of the school year could occur before the end of the formal bargaining period. *See* Ind. Code § 20-29-6-12 (providing that formal collective bargaining shall not begin before August 1); I.C. § 20-29-6-13(a) ("If, at any time after at least sixty (60) days following the beginning of formal bargaining collectively between the parties, an impasse is declared, the board shall appoint a mediator . . . .").

[8] As a final note, we observe that the Association argued to the Board and to the trial court that an LBO containing an impermissible item must be rejected in full. The Board rejected this argument, concluding that an LBO containing impermissible items need not be rejected if the LBO was the best choice under the four statutory factors that guide selection of LBOs, provided that any impermissible items were deleted from the LBO. Appellant's App. p. 14. The trial court agreed. *See id*. at 15. On appeal the Association does not argue that an LBO containing an impermissible provision must be rejected wholesale. Rather the Association only asks in its prayer for relief that the School's LBO be rejected in its entirety. Because the Association did not develop a cogent argument, we consider it waived. *See* Ind. Appellate Rule 46(A)(8)(a).