

FILED

Aug 12 2020, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Eric M. Hylton
Laura S. Reed
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:
INDIANA EDUCATION
EMPLOYMENT RELATIONS
BOARD

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Aaron T. Craft
Deputy Attorneys General
Indianapolis, Indiana

WEST CLARK COMMUNITY
SCHOOLS

Jonathan L. Mayes
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Culver Community Teachers Association, Decatur County Education Association, Smith Green Community Schools Classroom Teachers Association, and West Clark Teachers Association,

*Appellant-Petitioners,*

v.

Indiana Education Employment Relations Board,

*Appellee-Respondent,*

*and*

West Clark Community Schools,

*Intervenor.*

August 12, 2020

Court of Appeals Case No. 19A-PL-2989

Appeal from the Marion Superior Court

The Honorable Heather Welch, Judge

Trial Court Cause No. 49D01-1810-PL-41794

**Tavitas, Judge.**

# Case Summary

[1] The Culver Community Teachers Association, Decatur County Education Association, Smith-Green Community Schools Classroom Teachers Association, and West Clark Teachers Association, (collectively "Teachers Associations"), appeal from the trial court's denial of their joint verified petition for judicial review of the Indiana Education Employment Relations Board's ("IEERB") final decisions regarding their respective collective bargaining agreements ("CBAs"). We reverse and remand.

# Issue

The sole issue on appeal is whether the trial court properly denied judicial review of the IEERB's final decisions that the CBAs negotiated and ratified by the Teachers Associations and their respective school employers each included provisions that were contrary to law.

# Facts

For the 2017-2018 academic school year, the Teachers Associations' respective school corporations (the "School Employers") and the exclusive representatives[1] for the Teachers Associations negotiated and ratified CBAs. Pursuant to Indiana Code Section 20-29-6-6.1, the CBAs were submitted for review to an IEERB-appointed individual ("compliance officer") to ensure compliance with Indiana law.

On May 30, 2018, the IEERB compliance officer issued compliance reports and recommendations regarding the four CBAs and found that each CBA included a provision that was non-compliant with Indiana Code Section 20-29-6-4, which enumerates the mandatory subjects of collective bargaining for teachers. *See infra*.

---

[1] An "exclusive representative" is "the school employee organization which has been . . . recognized by a school employer as the exclusive representative of the employees" for purposes of collective bargaining. Ind. Code § 20-7.5-1-2(l).

The Teachers Associations appealed to the IEERB. On September 18, 2018, the IEERB entered individual final reports as to the Teachers Associations' respective CBAs. In each instance, as detailed below, the IEERB affirmed the compliance officer's finding of statutory non-compliance.

### *I. Culver CBA*

The IEERB compliance officer found the following provision from the Culver CBA to be non-compliant:

Article III

Compensation

* * * * *

> J. Ancillary Duties. Ancillary Duties are defined as meetings, professional development trainings, and other school activities outside the contractual day or Contractual year. Ancillary Duties do not include lesson planning and the grading of student work. In a given school year teachers shall be required to perform a maximum of ten (10) hours of Ancillary Duties at a rate of $0 per hours [sic].

Teachers Associations' App. Vol. II p. 207. In affirming the finding of statutory noncompliance, the IEERB found that the provision above did not comport with Indiana law because the "parties may not bargain a limitation on the assignment of an ancillary duty." *Id*. at 24. In its final report, the IEERB adopted the following provision from the compliance officer's report:

Although the parties may bargain wages for an ancillary duty, they may not bargain what constitutes an ancillary duty. The parties have included a definition of "ancillary duties" specifying what does and does not constitute an ancillary duty. What constitutes an ancillary duty is not a bargainable subject pursuant to Indiana Code § 20-29-6-4 and 20-29-6-4.5 and, therefore, is not compliant.

*Id*. at 39-40.

## II. Decatur CBA

The IEERB compliance officer found the following provision from the Decatur CBA to be non-compliant:

Article IV

Salary Regulations

Chapter 1. <u>Salary Requirements</u>

A. The Teacher's Compensation Model for the 2017-18 school year is set forth in Appendix 'A', which is attached hereto and incorporated herein along with the salary schedules referred to therein. The attached salary schedule reflects the salary increases that were bargained for the 2017-2018 term as compared to the 2016 2017 schedule.

* * * * *

 L. A teacher supervising Friday Night Detention shall be paid a flat rate of Seventy five Dollars ($75.00) for 12 students or less.

Teachers Associations' App. Vol. III, p. 32 (quotation omitted). In affirming the finding of statutory noncompliance, the IEERB stated: "[the] parties may not bargain a limitation on the assignment of an ancillary duty." Teachers Associations' App. Vol. II p. 24. In its final report, the IEERB adopted the following provision from the compliance officer's report:

> Although the parties may bargain wages for an ancillary duty, they may not bargain any parameters, restrictions, or limitations on the school's assignment of an ancillary duty. The parties have bargained compensation for supervising Friday night detention "for 12 students or less." The conditions of the assignment, i.e. for 12 students or less, is not a bargainable subject pursuant to Indiana Code § 20-29-6-4 and 20-29-6-4.5 and, therefore, is not compliant.

*Id*. at 34-35.

### III. Smith-Green CBA

[8] The IEERB compliance officer found the following provision from the Smith-Green CBA to be non-compliant:

Article III

Salary and Compensation

\* \* \* \* \*

9. Every effort shall be made by the corporation to provide a substitute teacher when a teacher is absent. In the event a substitute is not available for a period of time, upon mutual agreement, a teacher may be requested to supervise a class's

instructional time during his/her preparation period. The
teacher shall be compensated with one additional leave day for:

> • Each 6 periods in CJSHS
> • Each 5 hours in CES

The teacher shall be compensated with one-half of an additional
leave day for:

> • Each 3 periods in CJSHS
> • Each 2.5 hours in CES

Teachers are responsible for notifying the attendance secretary in
CJSHS or the administrative assistant in CES for any instances of
preparation period supervision.

Teachers Associations' App. Vol. III, p. 95. In affirming the finding of
statutory noncompliance, the IEERB found that the provision did not comport
with Indiana law because the "parties may not bargain a limitation on the
assignment of an ancillary duty." Teachers Associations' App. Vol. II p. 24. In
its final report, the IEERB adopted the following provision from the compliance
officer's report:

> The parties have impermissibly bargained restrictions on the
> school's assignment of a teacher to serve as a substitute for
> another teacher. Although the parties may bargain wages for an
> ancillary duty, they may not bargain any parameters, restrictions,
> or limitations on the school's assignment of the ancillary duty.

> The parties have bargained that "mutual agreement" of the
> teacher is required before the school can assign the teacher to
> serve as a substitute for another teacher. This is not a

bargainable subject pursuant to Indiana Code § 20-29-6-4 and 20-29-6-4.5 and, therefore, is not compliant.

*Id*. at 24-25.

### *IV. West Clark CBA*

The IEERB compliance officer found the following provision from the West Clark CBA to be non-compliant:

APPENDIX E

ANCILLARY DUTIES

\* \* \* \* \*

Lead Teacher — If a teacher is asked to, and accepts responsibility for, writing lesson plans, grading assignments, and entering grades for these assignments in the absence of a certified teacher for a week or longer, the teacher will receive an additional four hours of pay per week. Rate of pay for this duty will be at row E, Career Level 1 or Career Level 2, depending on the teacher's current Career Level placement.

Teachers Associations' App. Vol. III, p. 167. In affirming the compliance officer's finding of noncompliance, the IEERB found that the "parties may not bargain a limitation on the assignment of an ancillary duty." Teachers Associations' App. Vol. II p. 24. In its final report, the IEERB adopted the following provision from the compliance officer's report:

> Although the parties may bargain wages for an ancillary duty, they may not bargain any parameters, restrictions, or limitations on the school's assignment of an ancillary duty. The parties have bargained that as a condition of the Lead Teacher ancillary duty, the teacher must agree to accept the duty ("if a teacher is asked to, and accepts responsibility for . . ."). The condition of accepting an assignment is not a bargainable subject pursuant to Indiana Code § 20-29-6-4 and 20-29-6-4.5 and, therefore, is not compliant.

> The Compliance Officer notes that, if the conditioned acceptance was not bargained, but is function [sic] of school policy, the parties may avoid a future finding of noncompliance by including a statement to that effect.

*Id.* at 29-30.

[10] On October 17, 2018, the Teachers Associations jointly filed a petition for judicial review of the IEERB's final decisions affirming the compliance officers' findings of noncompliance. The IEERB filed its response on November 9, 2018. The Teachers Associations, IEERB, and intervenor West Clark Community Schools tendered briefs to the trial court, which heard argument on September 25, 2019. On November 25, 2019, the trial court entered its order, containing findings of fact and conclusions thereon, providing in part as follows:

**FINDINGS OF FACT**

* * * * *

2. In [ ] four [final] decisions, IEERB affirmed that a certain provision in each of the [Teachers Associations'] collective bargaining agreements ("CBA") was non-compliant with Indiana Code Section 20-29-6-4.

* * * * *

7. Specifically, in each of these four final decisions, IEERB found that the school and exclusive representative impermissibly bargained for a definition of, or limitation on, what constitutes an ancillary duty, in violation of Indiana Code section 20-29-6-4, which permits bargaining only for salary, wages, and salary and wage related fringe benefits.

* * * * *

## CONCLUSIONS OF LAW

12. According to Indiana Code section 20-29-6-1, [s]chool employers and school employees shall: (1) have the obligation and the right to bargain collectively the items set forth in section 4 [IC 20-29-6-4]; (2) have the right and obligation to discuss any item set forth in section 7 [IC 20-29-6-7]; an[d] (3) enter into a contract embodying any of the matters listed in section 4 [IC 20-29-6-4] of this chapter on which they have bargained collectively. Ind. Code § 20-29-6-1.

* * * * *

14. Pursuant to Indiana Code section 20-29-6-4, [a] school employer shall bargain collectively with the exclusive representative on the following: (1) salary, (2) wages, (3) salary and wage related fringe benefits, including accident, sickness, health, dental, vision, life, disability, retirement benefits, and

paid time off as permitted to be bargained under IC 20-28-9-11. Salary and wages include the amounts of pay increases available to employees under the compensation plan adopted under IC 20-28-9-1.5, but do not include the teacher evaluation procedures and criteria, any components of the teacher evaluation plan, rubric, or tool, or any performance stipend or addition to base salary based on a stipend to an individual teacher under IC 20-43-10-3.5. Ind. Code § 20-29-6-4.

15. Also, according to Indiana Code section 20-29-6-4.5, [f]or a contract entered into after June 30, 2011, a school employer may not bargain collectively with the exclusive representative on the following: (1) the school calendar; (2) teacher dismissal procedures and criteria; (3) restructuring options available to a school employer under federal or state statutes, regulations, or rules because of the failure of the school corporation or a school to meet federal or state accountability standards; (4) the ability of a school employer to: contract, partner, or operate jointly with an educational entity that provides postsecondary credits to students of the school employer or dual credits from the school employer and the educational entity; or (5) any subject not expressly listed in section 4 [IC 20-29-6-4]. Ind. Code § 20-29-6-4.5.

16. Furthermore, Indiana Code section 20-29-6-2 provides that, [a]ny contract may not include provisions that conflict with . . . section 4.5(a) [IC 20-29-6-4.5(a)]. Ind. Code § 20-29-6-2.

### a. IEERB's Interpretation of Ind. Code § 20-29-6-4

17. IEERB argues that its interpretation of Ind. Code § 20-29-6-4 was correct. IEERB specifically claims that parties to a CBA may not bargain the definition of an ancillary duty or other limitation because only schools have the authority to define or limit an ancillary duty. IEERB also claims that once the school

defines an ancillary duty, the parties may then bargain the wage for that particular ancillary duty.

18. In support of its argument, IEERB cites to the Indiana Code to say that, Indiana law provides that only school[ ] [employer] have the authority to direct the work of teachers and maintain efficient school operations, Ind. Code § 20-29-4-3(1), (5), and a CBA may not contain any provision that interferes with the school employer's rights, Ind. Code § 20-29-6-2(a)(3).

19. IEERB contends that if the parties bargained the definition of an ancillary duty, or some other limitation on an ancillary duty, then they would be infringing on the school's sole authority to direct the work and operations of the school. IEERB argues that the provisions challenged in these four cases show that the parties bargained limitations on what work teachers may or may not perform, which is, impermissible under Indiana law.

20. IEERB claims that Petitioners provide little to no explanation as to how the language of this statute (Ind. Code § 20-29-6-4) supports their claim that the school and the representative may bargain for certain ancillary duties or limitations on ancillary duties; *and instead, Petitioners rely on dicta in two cases to argue that this statute does not prohibit the parties from bargaining the definition of, or limitation on, an ancillary duty.*

21. The Court notes that the Petitioners rely heavily upon *IEERB v. Nettle Creek Classroom Teachers Ass'n*, 26 N.E.3d 47 (Ind. Ct. App. 2015) and *Jay Classroom Teachers Ass'n v. Jay School Corp.*, 45 N.E.3d 1217 (Ind. Ct. App. 2015) to support their arguments and interpretation of Ind. Code § 20-29-6-4.

### i. Court Decisions on Bargaining Ancillary Duties

* * * * *

23. [In *Nettle Creek*, the] Indiana Court of Appeals held that although teachers are not entitled to receive overtime compensation for performing normal teaching duties, they may negotiate for additional wages for responsibilities associated with ancillary duties.

24. In *Jay Classroom Teachers Ass'n*, the Indiana Court of Appeals held that "that compensable 'ancillary duties' can occur during the normal teachers' workday—where both parties agree to them and where they are not otherwise impermissible." The Indiana Supreme Court affirmed the Court of Appeals on the above issue.

25. This Court finds that, while the Petitioners rely on these two cases in support of their arguments, *Nettle Creek Classroom Teachers Ass'n* addressed the question of whether teachers' ancillary duties entitle them to additional compensation rather than whether Ind. Code § 20-29-6-4 provides teachers the ability to bargain with a school corporation as to what constitutes an ancillary duty. In *Jay Classroom*, the Court of Appeals held that the parties could bargain for additional compensation for ancillary duties during the normal teachers' workday. This Court does not find that *Nettle[ ] Creek* or *Jay Classroom* held that the School Corporation and Teachers Association could bargain for what the ancillary duty is because "Indiana law provides that only schools have the authority to direct the work of teachers and maintain efficient school operations, Ind. Code § 20-29-4-3(1), (5), and a CBA may not contain any provision that interferes with the school employer's rights." Ind. Code § 20-29-6-2(a)(3). Thus, this Court finds that neither of these cases under Indiana law allows the bargaining of what an ancillary duty is.

26. Based on this Court's reading of the statute and supporting Indiana law, the Court finds that IEERB's interpretation of Ind.

Code § 20-29-6-4 is reasonable, and thus this Court need not move forward with any other proposed interpretation. The Court holds that the IEERB's four final decisions were not arbitrary and capricious, and therefore the Petricioners' Petition for Judicial Review is DENIED.

Teachers Associations' App. Vol. II pp. 10, 12-20 (citations and quotations omitted) (emphasis added). The Teachers Associations now appeal.

## Analysis

[11] The Teachers Associations challenge the trial court's denial of their petition for judicial review. Pursuant to the Indiana Administrative Order and Procedures Act, we may only set aside an agency action if "(1) [it is] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." Ind. Code § 4-21.5-5-14(d). The party that seeks judicial review bears the burden to prove the agency action is invalid for one of the foregoing reasons. I.C. § 4-21.5-5-14(a).

[12] When reviewing a challenge to an administrative agency's decision, this Court will not try the facts de novo nor substitute its own judgment for that of the agency. *Jay Classroom Teachers Ass'n v. Jay School Corp.* ("*Jay Classroom II*"), 55 N.E.3d 813 (Ind. 2016) (citations and quotations omitted). "Rather, we defer to

the agency's findings if they are supported by substantial evidence." *Id.* "On the other hand, we review an agency's conclusions of law de novo." *Id.*

[13] Further, this Court "'employs a deferential standard of review of the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in the given area.'" *Senter v. Foremost Fabricators*, 137 N.E.3d 1027, 1031-32 (Ind. Ct. App. 2019).

> Although an agency's interpretation of a statute presents a question of law entitled to de novo review, the agency's interpretation is given "great weight." In fact, "if the agency's interpretation is reasonable, we stop our analysis and need not move forward with any other proposed interpretation." This is true even if another party presents "an equally reasonable interpretation."

*Jay Classroom II*, 55 N.E.3d at 816 (citations omitted). We will only reverse the agency if it incorrectly interpreted the statute. *Senter*, 137 N.E.3d at 1032-33.

[14] The Teachers Associations argue that the IEERB's final decisions, finding that the parties to the respective CBAs impermissibly bargained what constitutes an ancillary duty, are "contrary to Indiana law, arbitrary and capricious and should be reversed." Teachers Associations' Br. p. 15. The Teachers Associations maintain that, pursuant to Indiana caselaw, negotiations for compensation for ancillary duties are encompassed within the mandatory collective bargaining topics for teachers.

The IEERB counters that, although teachers associations may bargain *wages* for ancillary duties, teachers associations may not bargain *as to what constitutes an ancillary duty*. The IEERB argues that defining an ancillary duty is not among the mandatory bargaining topics enumerated under Indiana law, but, rather, is a matter to be left solely to the discretion of the school employer. *See* IEERB's final report, Teachers Associations' App. Vol. II p. 73 ("Once the ancillary duties [ ] are identified by the [School Employer], the parties are permitted to bargain the wage for the duty or position. The [collective bargaining agreement] would then reflect the [School Employer-]identified ancillary duty[ ] and the wage for the specific duty or position . . . .").

## I. Collective Bargaining by Indiana Schools and School Employees

### A. Statutes

The citizens of Indiana have a fundamental interest in the development of harmonious and cooperative relationships between school corporations and their certified employees. Ind. Code § 20-29-1-1(1). Recognition of the right of school employees to organize and acceptance of the principle and procedure of collective bargaining between school employers and school employee organizations can alleviate various forms of strife and unrest. I.C. § 20-29-1-1(2).

*Jay Classroom Teachers Ass'n v. Jay School Ass'n ("Jay Classroom I")*, 45 N.E.3d 1217, 1219-20 (Ind. Ct. App. 2015), *aff'd in part, vacated in part*, *Jay Classroom II*, 55 N.E.3d 813 (Ind. 2016).

In 2011, the statutory scheme governing collective bargaining for teachers was significantly amended to promote speed and

finality. Although those amendments left intact the bargaining rights and obligations of teachers and schools, I.C. §§ 20-29-4-1, -6-1 (Supp. 2011), they reduced the number of bargaining subjects . . . .

Specifically, the 2011 amendments eliminated permissive bargaining subjects altogether, while also limiting mandatory bargaining subjects to just wages, salaries, and related fringe benefits . . . .

*Jay Classroom II,* 55 N.E.3d 813, 817 (Ind. 2016) (citations omitted).

[18]     Several Indiana statutes are pertinent to our review. Indiana Code Section 20-29-6-1 provides:

(a) School employers and school employees shall:

(1) have the obligation and the right to bargain collectively the items set forth in [Indiana Code Section 20-29-6-4];

(2) have the right and obligation to discuss any item set forth in [Indiana Code Section 20-29-6-7] of this chapter; and

(3) enter into a contract embodying any of the matters listed in [Indiana Code Section 20-29-6-4] of this chapter on which they have bargained collectively.

(b) Notwithstanding any other law, before a school employer and school employees may privately negotiate the matters described in subsection (a)(1) during the time period for formal collective bargaining established in [Indiana Code Section 20-29-6-12] of this chapter, the parties must hold at least one (1) public hearing

and take public testimony to discuss the items described in subsection (a).

[19] Indiana Code Section 20-29-6-4 delineates the mandatory bargaining subjects of collective bargaining: (1) salary; (2) wages; and (3) "[s]alary and wage related fringe benefits, including accident, sickness, health, dental, vision, life, disability, retirement benefits, and paid time off as permitted to be bargained under IC 20-28-9-11."

[20] Indiana Code Section 20-29-6-4.5 provides:

> (a) For a contract entered into after June 30, 2011, a school employer may not bargain collectively with the exclusive representative on the following:
>
> > (1) The school calendar.
> >
> > (2) Teacher dismissal procedures and criteria.
> >
> > (3) Restructuring options available to a school employer under federal or state statutes, regulations, or rules because of the failure of the school corporation or a school to meet federal or state accountability standards.
> >
> > (4) The ability of a school employer to contract, partner, or operate jointly with an educational entity that provides postsecondary credits to students of the school employer or dual credits from the school employer and the educational entity.
> >
> > (5) Any subject not expressly listed in [Indiana Code Section 20-29-6-4] of this chapter.

(b) For a contract entered into after January 1, 2015, for a school year beginning after June 30, 2015, a school employer may not bargain collectively with the exclusive representative for the following:

(1) A matter described in subsection (a).

(2) A matter that another statute specifies is not subject to collective bargaining, including IC 20-28-9-1.5 and IC 20-43-10-3.5.

(c) A subject set forth in subsection (a) or (b) that may not be bargained collectively may not be included in an agreement entered into under this article.

[21] Indiana Code Section 20-29-6-2 provides:

(a) Any contract may not include provisions that conflict with:

\* \* \* \* \*

(6) [Indiana Code Section 20-29-6-4.5(a)] of this chapter.

(b) A subject that is set forth in [Indiana Code Section 20-29-6-4.5(a)] of this chapter may not be included in any contract after June 30, 2011.

[22] Indiana Code Section 20-29-6-6 provides:

The obligation to bargain collectively does not include the final approval of a contract concerning any items. Agreements reached through collective bargaining are binding as a contract only if ratified by the governing body of the school corporation

and the exclusive representative. The obligation to bargain collectively does not require the school employer or the exclusive representative to agree to a proposal of the other or to make a concession to the other.

[23] Indiana Code Section 20-29-6-6.1 provides:

(a) After ratification of a contract under [Indiana Code Section 20-29-6-6] of this chapter, a school employer shall submit the [CBA], including the compensation model developed under IC 20-28-9-1.5, to the [IEERB].

(b) The [IEERB] shall appoint a staff member or an ad hoc panel member to review each submitted [CBA] and to make a written recommendation concerning the [CBA]'s compliance with this chapter, including a penalty for any noncompliance. . . .

* * * * *

(f) If, following the review of a [CBA], the [IEERB] finds the [CBA] does not comply with this chapter, the [IEERB] shall issue an order that may include one (1) or more of the following items:

(1) Ordering the parties to cease and desist from all identified areas of noncompliance.

(2) Preventing the parties from ratifying any subsequent [CBAs] until the parties receive written approval from the [IEERB] or the [IEERB]'s agent.

(3) Requiring other action as deemed appropriate by the [IEERB] as authorized by state law. . . .

## B. Caselaw

In support of their argument that negotiations of ancillary duties are encompassed within the mandatory collective bargaining topics for teachers, the Teachers Associations rely upon *Jay Classroom I* and *Nettle Creek*, which we discuss in turn below.

### A. *Nettle Creek*

In *Nettle Creek*, the Nettle Creek school employer and teachers association reached a stalemate in their collective bargaining negotiations regarding the teachers association's request for additional compensation for ancillary duties that the school employer required its teachers to perform outside the teachers' normal teaching duties. After the parties were unsuccessful at mediation, the parties, as required by statute, tendered their last best offers to the IEERB in order for the IEERB to select one party's last best offer to serve as the parties' bargained contract for the academic year. The school employer's last best offer excluded the additional compensation provision from its last best offer, and the teachers association included the provision in its last best offer.

The IEERB recommended the adoption of the school employer's last best offer, which did not allow for the desired additional compensation for ancillary duties. The teachers association filed a petition for judicial review, and the trial court reversed the IEERB's decision as arbitrary, capricious, and contrary to law. The IEERB appealed, and a panel of this Court found that, although "teachers are not entitled to receive overtime for performing their 'normal'

teaching duties, i.e., duties that are completed as part of one's direct teaching function[,] . . . . teachers may negotiate for additional wages for responsibility associated with co-curricular duties that are voluntarily assumed by a teacher." *Nettle Creek*, 26 N.E.3d at 56. The panel remanded to the IEERB to "review the parties' proffered [last best offers] taking into consideration" that "[the] parties may negotiate for additional wages for required ancillary duties . . . ." *Id*. at 57.

## B. Jay Classroom I and Jay Classroom II

[27] In *Jay Classroom I*, the Jay teachers association and school employer reached an impasse in their collective bargaining negotiations. After a failed mediation, the parties tendered last best offers to an IEERB factfinder, who recommended the adoption of the school employer's last best offer as the parties' master contract. The teachers association appealed to the IEERB. After a hearing, the IEERB affirmed the factfinder's recommendation.

[28] Despite the affirmance, however, the IEERB ordered stricken from the adopted contract a provision ("the additional compensation provision") that appeared in both parties' last best offers. The additional compensation provision authorized extra pay and established a pay scale for teachers who, voluntarily or by assignment, covered other teachers' classes. The IEERB reasoned that the additional compensation provision was statutorily impermissible and "would allow teachers to be double-paid for an assignment of duties." *Jay Classroom I*, 45 N.E.3d at 1221. The teachers association filed a petition for judicial review, which was denied by the trial court. The trial court found, in part, that the

additional compensation provision allowed teachers to be doubly-paid for performing their duties.

[29] The teachers association appealed to this Court, which found that the additional compensation provision was not prohibited by statute or otherwise impermissible and, thus, should not have been stricken. This Court reasoned:

> . . . we find that the question of ancillary duties can be determined at the local level. Particularly where, as here, both the Association and the School included the very same additional-compensation provision in their respective [last best offers]. This shows a clear agreement and understanding between the parties that covering another teacher's class during the normal workday *does* fall outside the scope of normal teaching duties—at least within *this* school district—and thus authorizing additional compensation for this duty does not constitute "double payment." * * * * * In sum, we find that the provision was not prohibited by statute or otherwise impermissible. *See* I.C. § 20-29-6-18(b) (providing that the [IEERB]'s decision must be restricted to only those items permitted to be bargained and included in the collective bargaining agreement).

*Id*. at 1225.

[30] Although our Supreme Court granted transfer and reversed this Court's *Jay Classroom I* judgment on grounds relating to an unrelated provision, *Jay Classroom II* "summarily affirm[ed]" this Court's holding in *Jay Classroom I* that the additional compensation provision was not prohibited by statute or otherwise impermissible. Our Supreme Court reasoned as follows:

On direct appeal, the [teachers association] also argued that the IEERB improperly struck a contract provision in both parties' [last best offers] that "provid[ed] additional wages to teachers who volunteer or are assigned to cover a class." *Jay Classroom* [*I*], 45 N.E.3d at 1223. The trial court had affirmed the IEERB's decision to strike the additional compensation provision, concluding that "teachers cannot receive payment above their salaries for teaching duties and that this provision allowed teachers to be double paid for their assigned duties." The Court of Appeals disagreed and held that the additional compensation provision was permissible. We agree and summarily affirm the Court of Appeals on this issue.

*Jay Classroom II*, 55 N.E.3d at 816 n.1 (citations omitted).

## II.    *Teachers Associations v. IEERB*

In applying the pertinent statutes and caselaw to the instant facts, we observe that, when the General Assembly limited the mandatory bargaining topics to salary, wages, and wage-related benefits, it evinced its intention that school employers and teachers associations could rightfully negotiate as to wage and wage-related fringe benefits. *See* I.C. § 20-29-6-4. Moreover, by designating certain topics—including wages—for mandatory bargaining, while relegating other topics to "discuss[ion]" only at the school employer's discretion, the General Assembly further evinced its intention to allow school employers to direct the course of collective bargaining negotiations with teachers. *See* I.C. § 20-29-6-7. This is consistent with the following conclusions of law entered by the trial court in its order denying the petition for judicial review:

17. IEERB argues that its interpretation of Ind. Code § 20-29-6-4 was correct. IEERB specifically claims that parties to a CBA may not bargain the definition of an ancillary duty or other limitation because only schools have the authority to define or limit an ancillary duty. IEERB also claims that once the school defines an ancillary duty, the parties may then bargain the wage for that particular ancillary duty.

18. In support of its argument, IEERB cites to the Indiana Code to say that, Indiana law provides that only schools have the authority to direct the work of teachers and maintain efficient school operations, Ind. Code § 20-29-4-3(1), (5), and a CBA may not contain any provision that interferes with the school employer's rights, Ind. Code § 20-29-6-2(a)(3).

Teachers Associations' App. Vol. II pp. 17-18 (quotations omitted).

[32] As an initial matter, we note that, although the IEERB artfully frames the issue as whether the Teachers Associations impermissibly negotiated what constitutes an ancillary duty, the record reveals that the Teachers Associations and their respective School Employers agreed as to what constituted an ancillary duty *and bargained regarding the compensation therefor*, as is authorized by the *Jay Classroom I* and *Nettle Creek* holdings. Identifying agreed-upon ancillary duties is not the same as bargaining them.[2] A plain and ordinary reading of the

---

[2] In reading the CBAs as a whole, and giving the provisions their plain and ordinary meaning, we observe the challenged Culver, Decatur, and Smith Green provisions are appropriately catalogued within CBA articles governing either salary or compensation; and the challenged provision in the West-Clark CBA is found in an appendix labelled, "Ancillary Duties[.]" Teachers Associations' App. Vol. III, p. 167.

CBAs does not indicate that the parties bargained regarding which ancillary duties teachers would be required to perform. Rather, the parties identified the compensable ancillary duties and bargained the compensation accordingly.

[33] Notwithstanding the IEERB's repeated acknowledgment of the School Employers' authority to direct the course of collective bargaining regarding ancillary duties, the IEERB failed to honor the intent of the respective School Employers. Just as the last best offers submitted separately by the school employer and teachers association in *Nettle Creek* included the same "additional compensation provision[,]" the ratified CBAs here—which reflected the bargained agreement of the School Employers and Teachers Associations— included the challenged provisions pertaining to ancillary duties. It is, therefore, undisputed that the School Employers were aligned with the Teachers Associations regarding these IEERB-challenged provisions.

[34] Although the trial court discounted *Nettle Creek* and *Jay Classroom I* as mere dicta, the holdings of these cases are not dicta. These cases are directly on-point and set forth legal holdings that directly relate to the issue at-bar. *See Sw. Allen Cty. Fire Prot. Dist. v. City of Fort Wayne*, 142 N.E.3d 946, 956 (Ind. Ct. App. 2020) ("[S]tatements that are not necessary in the determination of the issues presented are dicta, are not binding, and do not become the law of the case."). The trial court's findings and conclusions thereon dismissing *Nettle Creek* and *Jay Classroom I* as dicta are clearly erroneous.

[35]     *Nettle Creek* and *Jay Classroom I* presented more of a challenge than the instant matter because, in those cases, the parties could not fully agree regarding the ancillary duties sought to be bargained. Nonetheless, in *Nettle Creek* and *Jay Classroom I*, this Court held that teachers may negotiate for additional wages for responsibilities associated with ancillary duties. As the *Nettle Creek* panel reasoned:

> . . .[W]e interpret the law to provide that although the law does not allow for the receipt of overtime compensation by teachers related to their direct teaching functions, teachers are not necessarily excluded from receiving additional wages for required or agreed upon ancillary duties. Notably, counsel for the [IEERB] conceded during oral argument that it is possible under the relevant statutory authority for a teacher to earn wages in addition to the teacher's salary and that an agreed-upon salary for direct teaching functions does not exclude wages for other functions completed by the individual teacher. As such, we conclude that teachers may negotiate with their employers for the receipt of additional wages for these ancillary duties. In reaching this conclusion, however, we do not mean to say that a school corporation must compensate teachers for the ancillary duties, but only that the law allows that teachers may negotiate with their employers for additional compensation for said ancillary duties.

*Nettle Creek*, 26 N.E.3d at 56; *see Jay Classroom I*, 45 N.E.3d 1219 ("We find that under both statutory law and *Nettle Creek*[,] a teacher can receive additional compensation for ancillary duties, and that covering another teacher's class during the normal workday can be a compensable ancillary duty outside the scope of normal teaching duties—where both parties agreed to the same

additional-compensation provision and included it in their respective [last best offers].").

[36] Given the willingness of the School Employers to bargain regarding the ancillary duties at issue, we cannot agree with the IEERB's conclusion that the challenged provisions interfered with the School Employers' collective bargaining rights. To the contrary, by including the challenged provisions in the final, negotiated, and ratified CBAs, the School Employers assented to and permitted bargaining thereon, and the Teachers Associations did not impermissibly dictate bargaining subjects for negotiation.

[37] The School Employers and Teachers Associations reached final agreements after they followed the collective bargaining processes established by Indiana Code Chapter 20-29-6. One of the stated aims of Indiana Code Chapter 20-29-6 is for school employers and school employee organizations to "develop[ ] harmonious and cooperative relationships" by way of a statutory process meant to "alleviate various forms of strife and unrest." *See Jay Classroom I,* 45 N.E.3d at 1219-20. The parties accomplished their bargaining purposes here without strife and unrest; and we are perplexed by the IEERB's stance in this case. The reasoning of the *Jay Classroom I* panel is especially instructive here:

> . . . the question of ancillary duties can be determined at the local level. *Particularly where, as here, both the Association and the School included the very same additional-compensation provision in their respective* [*last best offer*]*s. This shows a clear agreement and understanding between the parties* . . . . In sum, we find that the

provision was not prohibited by statute or otherwise impermissible. . . .

*Jay Classroom I*, 45 N.E.3d at 1225 (emphasis added).

[38] For the foregoing reasons, we find the IEERB's interpretation of the applicable statutes to be unreasonable and decline to afford great weight thereto. The Teachers Associations have carried their burden to prove that the IEERB's final decisions regarding their respective CBAs are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Accordingly, we find that the trial court erred in denying the Teachers Associations' joint petition for judicial review. We reverse and remand to the IEERB with instructions to adopt the ratified CBAs of the School Employers and the Teachers Associations.

## Conclusion

[39] The trial court erred in denying the Teachers Associations' petition for judicial review. We reverse and remand.

[40] Reversed and remanded.

Mathias, J., concurs.

Riley, J., dissents with opinion.

| | |
|---|---|
| Culver Community Teachers Association, *et al.*, | Court of Appeals Case No. 19A-PL-2989 |
| *Appellants-Petitioners,* | |
| v. | |
| Indiana Education Employment Relations Board, | |
| *Appellee-Respondent,* | |
| And | |
| West Clark Community Schools, | |
| *Intervenor.* | |

**Riley, Judge dissenting**

[41] I respectfully dissent from the majority's conclusion that the IEERB's final decisions regarding the four CBAs at issue were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and, thus, that the trial court erred in denying the Teachers Associations' petition for review. Indiana Code section 20-29-6-4 limits the mandatory subjects for collective bargaining to salary, wages, and salary and wage-related benefits. Accordingly, pursuant

to the plain terms of the statute, what constitutes an ancillary duty cannot be a subject for collective bargaining. *See also* I.C. § 20-29-6-4.5 ("[A] school employer may not bargain collectively with the exclusive representative on . . . [a]ny subject not expressly listed in [I.C. § 20-29-6-4]."). In reaching a contrary conclusion, the majority relies on *dicta* contained in our previous decisions in *Nettle Creek Classroom Teachers Ass'n* and *Jay Classroom I*, neither of which addressed the issue at hand, which is properly framed as whether Indiana Code section 20-29-6-4 provides teachers the authority to bargain with a school corporation as to what constitutes an ancillary duty.

[42] As the majority acknowledges, we accord deference to an administrative agency's interpretation of a statute it is charged with enforcing. Given the plain terms of the statute and the lack of binding legal authority for the Teachers Associations' position, I cannot conclude that the trial court erred when it denied the petition for judicial review. For these reasons, I respectfully dissent.